Andrew J. Di Paola, J.
The defendant Long Island Lighting Company (LILCO) has moved to dismiss the class action complaint in this suit on the grounds that it has a defense founded upon documentary evidence, that the court has no jurisdiction of the subject matter of the cause of action, and that the complaint fails to state a cause of action.(CPLR 3211, subd. [a]., pars. 1, 2, 7).
From the complaint and papers before the court, it appears that Gerald L. Lotto, a resident of the Village of Lake Grove, suing on behalf of himself and all other similarly situated customers of LILCO located in 77 designated villages in Nassau and Suffolk Counties, in the Cities of Long Beach and Glen Cove, and in the 5th Ward of Queens County, New York City, seeks: (1) a declaration that LILCO’s rate schedule effective October 8, 1973, following approval. by the Public Service Commission[1] is contrary to law, illegal and invalid to the extent that it imposes a surcharge equal to the tax on residents of the cited municipalities all of which tax gross revenues of LILCO derived from its services' therein, pursuant to the statutory authority hereafter discussed[2]; (2) judgment for damages; and (3) an award of counsel fees. The Town of Islip was granted leave to intervene in the action as a party defendant by order made ¡June 21, 1974 (.DeLuoa, J.) and has since the argument of the motion (in which it participated) served as part, of its papers before the court an answer to the complaint seeking dismissal of the complaint and containing a cross claim against LILCO for reimbursement for so much of city and village utility taxes as prior to May 17,1973[3] were allegedly paid by'it as part of then existing rate schedules which passed on such taxes by including them as operating expenses used to arrive at approved rates for LILCO’s entire service area (rather than by the surcharge method limited to users in particular parts of the service area).
A better understanding of the issues presented depends upon an appreciation of the applicable statutes. By chapter 321 of the Laws of 1937 there was passed: “ an act to amend the tax law, in relation to imposing a tax upon gross incomes or gross *10 operating .incomes of corporations and persons .furnishing utility services, and the general city law, in relation to authorizing cities, by local laws, to impose similar taxes fpr local unemployment relief, and making an appropriation to the department of taxation and finance.”
To the Tax Law was added section 186-a imposing a gross income tax “ upon every utility doing business .in this state which is subject to the supervision of the state department of . public service ” (subd. 1) and providing that “ the tax imposed by this section shall be charged against and be paid by the utility and shall not be added as a. separate item to biEs rendered by the utility to customers or others but shall constitute a part of the operating costs of such utility” (subd. 12).
The amendment to the General City Law made by section 2 of chapter 321 of the 1937 act added section 20-b to that’law and provided that “ any city of this state, acting through its local, legislative body, foi* the purpose of granting relief from -the hardships and .suffering caused by unemployment ”[4] could impose “ a tax such as is imposed by section one hundred eighty-six-a of the tax law ” at a limited rate. It was'stated that “ a tax imposed pursuant to this seetiop shall have application only within the territorial limits of any silch. city, and shall be in addition to any and all other taxes.” ' Later versions of'section 20-b omit the reference and limitation to unemployment relief purposes.
Originally and currently the General City Law provisions included and include the following: “ All of the provisions óf section one hundred eighty-six-a. of ¡the tax law, so far as the same are or can be made applicable, with such limitations as are set forth in this section, and such modifications as may be necessary in order to adapt such taxes to local conditions shaU apply to the taxes authorized by this section.” (General City Law, § 20-b.)
*11 In 1950, villages of the first class were granted power to tax the gross income of utilities as described in chapter 591 of the Laws of 1950, which added section 138-d to the Village Law. It contained the language quoted immediately above incorporating section 186-a of the Tax Law. That grant of power, now extended to all villages, and the quoted language of incorporation appear in the current version of section 5-530 of the Village Law (renumbered by chapter 892 of the Laws of 1972 from section 6-640 of the Village Law as added by chapter 767 of the Laws of 1967).[5]
It is stated in New York City’s brief before the commission and in the answering affidavit and not disputed that prior to the classification now involved ([1973] 13 P. S. C. 846), taxes imposed by cities and villages in LILCO’s service area on LILCO’s gross revenues pursuant to the foregoing enabling statutes were treated as were all other taxes as operating expenses of LILCO in fixing its general rates prevailing in its system area and thus recapturing the cost thereof. The effect obviously was to pass on to LILCO’s users not resident in a city or a village that imposed a gross revenues tax, a share of the increase in rates required by the imposition of such a tax by such local municipalities as did in fact impose one.[6]
In 1970, in Consolidated Edison Co. of N. Y. (10 P. S. C. 434, 459) the Public Service Commission wrote:
“ The city of New York takes exception to the Examiner’s tacit approval of Con Ed’s proposal to isolate revenue taxes as a separate item in its tariff and, perhaps, on its bills * * *
"The city calls attention to Article 9, section 186-a 12 of the Tax Law * * * [quoting subdivision 12 referred to at pages 2-3 of this memorandum]. This provision clearly does not prohibit utility companies from making provision in their tariffs for rate differentials reflecting the tax rates applicable in various jurisdictions. Indeed, Con Ed’s present tariff includes provisions that increase the otherwise applicable rates by 1.35 per cent for service in New York city so as to reflect the higher revenue tax rate in the city * * * The tax imposed by the City of New York is not a tax imposed by section 186-a of the Tax Law. We conclude that the proposed tariff and billing proposal are lawful and appropriate.” (Emphasis in original.)
*12 In its opinion approving LILCO’s rate structure now under plaintiff’s attack, .the Public Service Commission referred to the surcharge for municipal revenue taxes and said: “ The City [the 5th Ward in Queens Copnty is in LILCO’s service area] excepts to the Examiner’s recommendation that LILCO’s proposed tariff surcharge for State and local revenue taxes be adopted * * *
The City argues that it is unfair to single out a single expense or tax item for separate rate treatment when all other such items are collected from all ratepayers on a uniform basis. The Examiner concluded that such revenue taxes are analogous to sales taxes levied on the utility rather than the customer directly. Therefore, he reasoned there would be no inequity involved since the customers who use the electricity and provide the revenues which give rise to the tax would bear their pro rata portion. Such a- surcharge is consistent with that approved by this Commission in Consolidated Edison Company of New York, Inc. (Electric), 10 NY PSC 434, 459 (1970). We are not persuaded, however, that it is necessary to include State revenue taxes since they are imposed at a uniform rate throughout LILCO’s service area. . Therefore, we conclude that a surcharge only for local revenue taxes is appropriate. Accordingly, LILCO’s .present base rates will have to be reduced to eliminate local revenue taxes as an expense item.” (Emphasis in original.)
It is against this background of legislation and Public Service Commission action that we consider the problems presented by LILCO’s motion to dismiss. Their resolution will not affect the revenues of LILCO, for these remain the same whether its expenses for gross revenue taxes are recovered: (1) by distributing the burden thereof over the entire system; or (2) by allocating that burden to only the users in cities and villages who create the base (gross revenues from such use) upon which the expense for the tax is computed. The latter classification approved by the Public Service Commission is not forbidden if founded upon' reason and hot upon caprice or favor and if the law does not mandate otherwise (cf. City of Rochester v. Rochester Gas & Elec. Corp., 233 N. Y. 39, 47)_
_ The challenge to the court’s jurisdiction over the subject matter is not well taken. Assuming that the reasonableness of rates promulgated by a utility is a matter reserved to the Public Service Commission in the first instance as urged by LILCO (cf. City of Troy v. United Traction Co., 202 N. Y. 333; Cardone v. Consolidated Edison Co. of N. Y., 197 Misc. 188, affd. 276 App. Div. 1068), that is not decisive or final, since the issue here presented is one of the construction of the taxing statutes from the determination *13 of which the court may not be ousted by the administrative process (cf. Staten Is. Edison Corp. v. Maltbie, 296 N. Y. 374; Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304; Matter of Figari v. New York Tel. Co., 32 A D 2d 434; Cardone v. Consolidated Edison Co. of N. Y., 276 App. Div. 1068; Lemoyne Arms v. Central New York Power Corp., 191 Misc. 709). Nor was the commission’s rejection of the argument of the City of New York in the proceedings before it an adjudication binding on this plaintiff in these judicial proceedings (cf. Murphy v. New York City R.R. Co., 225 N. Y. 548; Stern Bros. v. New York Edison Co., 251 App. Div. 379). It made no factual findings which are challenged. Its conclusion in this respect rested solely upon statutory construction. That determination is now the subject of judicial consideration for the first time.
The previously reviewed history of the enabling legislation authorizing city and village taxation of gross utility revenues from services rendered consumers within the taxing municipality, and the former and present administrative provisions of those statutes such as those relative to the local collection and deposit of the revenues, review of imposition of the tax and recourse for erroneous, illegal or unconstitutional collection thereof by the local fiscal officers, convince the court that the present determination of the commission as to the allocation of such taxes is equitable, fair and just. The purpose of the local tax being strictly local benefit, it is appropriate that reimbursement for that tax be by way of local surcharge. In this respect the court is also mindful of the fact that “ it is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld ’ ’ (Matter of Howard v. Wyman, 28 N Y 2d 434, 438). The Public Service Commission in fixing a utility’s rates must take into account the utility’s expenses such as taxes, thus warranting consideration of its construction of statutes applicable to its rate-fixing function.
The plaintiff urges that subdivision 12 of section 186-a of the Tax Law, which directs that the State gross revenues tax on utilities be treated as part of system operating costs, is applicable to cities and villages because the enabling legislation for such taxes makes the provisions of section 186-a of the Tax Law applicable to local municipal taxes “ so far as the same are or can be made applicable ”, i.e., that this has the effect of incorporating subdivision 12 of section 186-a of the Tax Law into local utility revenue tax laws.
*14 It is clear that the State taxing measure in directing that the State tax be treated as a utility system expense when fixing rates has the effect of apportioning the State tax over the entire body of users of the system’s services, the very same body from which are derived the revenues on which the tax is based. The local municipal taxes on the other hand, if treated as an expense of the entire system for rate making purposes, have the effect of increasing rates for users of the system who do not reside in cities or villages imposing a tax (and for users of smaller taxing municipalities in the service area as compared with larger taxing-units) and who are in no way responsible for the tax expense. The court agrees with LILCO that this produces an unjust and unreasonable result and that a court should avoid a statutory construction that results in such injustice and seeks a more reasonable interpretation (Matter of Breen v. New York Fire Dept. Pension Fund, 299 N. Y. 8, 19; Matter of Meyer, 209 N. Y. 386, 389; Cluett, Peabody & Co. v. J. W. Mays, Inc., 5 A D 2d 140, 149; affd. 6 N Y 2d 952). As was said in Matter of Rouss (221 N. Y. 81, 91): “ Consequences cannot alter statutes, but may help to fix their meaning. ”
It is concluded that subdivision 12 of section 186-a of the Tax Law is not one of the provisions of that section that is or can be made applicable to section 20-b of the General City Law, or section 5-530 of the Village Law. It follows that the complaint fails to state a cause of action and is dismissed without leave to replead.
Ho motion is pending with respect to the cross claim of the Town of Islip against LILCO and no determination is necessary or made with respect to it. The action involved in the cross claim is severed and continued. The judgment to be settled hereon shall provide for the severance, that the cross claim be treated as a complaint and that LILCO’s time to answer or move with respect to that complaint be extended for 20 days after service of a copy of the judgment to be made hereon with notice of its entry.
Settle judgment on notice declaring LILCO’s rate schedule effective May 17,1973, to be valid and legal and that the adjustments made therein for the allocation of the expense of city and village gross revenues taxes on LILCO affecting plaintiff and the class in behalf of which he sues are not prohibited by statute and are proper and reasonable.

. See Case Nos. 26283 (electric rates), and 26284 (gas rates) determined by the commission’s opinion No. 73-17 issued May 9, 1973.

. As noted in LILCO’s schedules distributed to its users: "We are taxed on our revenues from the sales of electricity and gas by Cities and Incorporated Villages. Your total bill includes .a percentage adjustment equal to the tax rate in effect in your City or Incorporated Village as shown below. (This is not the Sales Tax).”

. The answer refers to May, 1973 and the date is that of record.

. The stress on the local and the relief functions was accented by the provisions that revenues resulting from this tax “ shall be paid into the treasury ,o£ -the city imposing the same, and shall not be credited to or deposited in the general fund of such city, but shall be deposited in a separate bank account or accounts, and shall be available and used solely and exclusively for the relief purposes for which the said taxes have been, imposed under the provisions of this section [i.e. General City Law, § 20-b] ” (L. 1937, ch. 321, § 2), and authorizing’ performance of local public work for relief purposes to be paid out of the special taxes. (See, also, N. Y. Legis. Doc., 1937, No. 91; Message of the Governor Recommending An Additional Appropriation of $24,000,000 for Unemployment Relief by a Tax on Utility Services Other Than Railroads, Public Papers of Governor Herbert H. Lehman, p. 243 [1937].)

. Intervening changes in the provisions of the General City and Village Laws are not relevant to present considerations.

. The Town of Islip in its memorandum claims that more than 75% of the population in LILCO’s service area in Nassau and Suffolk lives in towns and villages and cities that do not impose the tax. That assertion is not disputed by the other parties hereto.