GERALD L. LOTTO, on Behalf of Himself and All Others Similarly Situated, Plaintiff, v LONG ISLAND LIGHTING COMPANY, Appellant. TOWN OF ISLIP, Intervenor-Respondent.

Second Department, July 18, 1977

*Edward M. Barrett (Edward J. Walsh, Jr.,* and *William R. Humburg* of counsel), for appellant.

*Francis G. Caldeira (Gloria M. Rosenblum* of counsel), for intervenor-respondent.

SHAPIRO, J. In a class action against the defendant Long Island Lighting Company (LILCO), *inter alia,* to declare certain rate increases to be invalid, wherein the intervenor Town of Islip (Islip) cross-claimed against the said defendant for an

accounting on behalf of itself and its residents, LILCO appeals from so much of an order of the Supreme Court, Suffolk County, entered January 8, 1976, as denied its motion to dismiss the cross claim.* We reverse the order insofar as it is appealed from, and grant the motion to dismiss.

### THE ISSUE

Was it improper for LILCO, pursuant to filed rate schedules approved by the Public Service Commission (the commission), to recover *village* gross revenue taxes by charging such taxes as part of its *general* operating expenses (so that residents of *other* areas had their utility bills increased as a result), where it had been doing so for 30 years (until the commission, in 1973, required that the taxes be allocated to the residents of the taxing villages)? The court at Special Term held that it was improper *(Lotto v Long Is. Light. Co.,* 84 Misc 2d 347).

### THE FACTS

From 1937 to 1970 the Public Service Commission treated the gross revenue tax imposed on a utility by villages and cities as a general operating expense in determining the utility's rates. The effect was that such taxes were recovered from all of the utility's customers, including residents of municipalities which had not imposed such tax.

In 1970 the commission changed the accounting practice and permitted Consolidated Edison Company of New York, Inc. to surcharge the residents of New York City an amount equal to the gross revenue taxes imposed by New York City upon that utility *(Matter of Consolidated Edison Co.,* 10 NY PSC Rep 434, 85 PUR 3d 276). Based thereon, LILCO applied in its rate proceeding for authorization to treat similar taxes imposed by municipalities in the same manner, and the application was granted in 1973 *(Matter of Long Is. Light, Co.,* 99 PUR 3d 457, 467).

In this proceeding Islip seeks reimbursement for itself and its residents for so much of city and village gross revenue taxes imposed upon LILCO as were, prior to May, 1973, included in the utility's operating expenses in establishing

---

* The complaint of the original plaintiff was dismissed by Special Term and his appeal was dismissed by this court, which directed that the cross claim of the Town of Islip be treated as a complaint.

rate schedules. In this manner, LILCO collected such taxes from its users in Islip and from Islip itself.

### THE LAW

Subdivision 1 of section 5-530 of the Village Law authorizes any village to impose a tax on utilities "such as was imposed by section one hundred eighty-six-a of the tax law * * * except that the rate thereof shall not exceed one per centum of gross income or of gross operating income, as the case may be". (Section 186-a of the Tax Law imposes a tax of a certain percentage of the gross income upon every utility doing business in the State.) Subdivision 1 of section 5-530 further provides: "A tax imposed pursuant to this section shall have application only within the territorial limits of any such village, and shall be in addition to any and all other taxes. This section shall not authorize the imposition of a tax on any transaction originating or consummated outside of the territorial limits of any such village, notwithstanding that some act be necessarily performed with respect to such transaction within such limits."

Islip claims that the first sentence expressed the legislative intent that the *expense* of village taxes on utilities was to be borne only by residents of the village imposing such tax. LILCO claims that it merely defined the *scope* of the tax, and that this was clarified in the succeeding sentence. Special Term concluded, *inter alia,* that (a) the statute was ambiguous; (b) the Public Service Commission had made two inconsistent interpretations because from 1937 to 1970 it treated the local municipal taxes as a general operating expense, but in 1970 (as to Consolidated Edison) and 1973 (as to LILCO), by permitting local surcharges, it excluded such taxes from being treated as a general operating expense; and (c) there was no statutory justification for the commission's earlier interpretation, since it produced inequitable results.

However, the issue is not the fairness of the commission's 1937 to 1973 accounting treatment of the local taxes imposed on LILCO, but whether there is an ambiguity in section 5-530 of the Village Law. We see no ambiguity. That statute permits any village to impose a gross income tax on utilities, but contains the caveat that the tax is to apply only within its territorial limits, i.e., a village could not tax gross income derived from a utility's customers who reside outside of the village's territorial limits. It was silent, not ambiguous, how-

ever, as to how the taxes should be treated for rate purposes. Clearly, it would make no difference to LILCO since its total reimbursement would be the same no matter what accounting method was used.

Such legislative silence simply meant that it was for the commission to decide, in the first instance, the accounting status of such taxes, since it is mandated to oversee a utility's rates and charges (Public Service Law, § 66, subd 5; *Cardone v Consolidated Edison Co. of N. Y.,* 197 Misc 188, 191, affd 276 App Div 1068). The accounting treatment of the municipal gross income taxes as a general operating expense was applied by the commission, apparently without protest, for more than 30 years. Indeed, the change (in 1970 and 1973) was not due to any protest or a CPLR article 78 review, but was made on the commission's own decisions approving the respective tariff provisions of Consolidated Edison and LILCO for rate differentials reflecting the tax rates applicable in various jurisdictions. That change did not mean that the prior accounting method was illegal and should give rise to applications for reimbursement (see *Murphy v New York Cent. R. R. Co.,* 225 NY 548, 557; *Purcell v New York Cent. R. R. Co.,* 268 NY 164, 171; 1 NY Jur, Administrative Law, § 109).

Administrative agencies charged with the overseeing of utility rates should be free to take a fresh look at accounting methods and to make changes they deem appropriate without being concerned that they would thereby cause the utility to be liable in damages in vast amounts. A fortiori, this should be so where the utility recieved no more under the old method than it will under the new.

The order, insofar as it denied LILCO's motion to dismiss Islip's cross claim, should be reversed and the motion should be granted.

TITONE, J. (dissenting). The gravamen of this matter is not, as the majority suggests, one that merely involves a change in bookkeeping and accounting procedures of LILCO. Rather, it is one approaching constitutional dimensions. Simply put, what the majority should have addressed itself to is that for more than 30 years prior to 1973 LILCO had engaged in unfair discriminatory practices, and also violated certain statutes of this State, by recovering local gross revenue taxes from all of its customers as a general operating expense, rather

than from just those of its customers living within cities and villages which imposed such taxes, and which derived benefits therefrom. To minimize the issue herein to one merely relating to questions of accounting, is somewhat akin to considering the decision in *Brown v Board of Educ.* (347 US 483), which struck down the "separate but equal" doctrine, as simply one involving the comparison of cost factors of a consolidated school for members of both the Black and White races, with the combined cost factors of individual schools for each race.

To me, the fact that LILCO, with the Public Service Commission's approval, treated municipal and village revenue taxes as a general operating expense to be passed on to all of its customers for more than 30 years, is irrelevant and unpersuasive. Unfair discriminatory practices, perpetuated over a great period of time under the protective arm of government, are not necessarily less abhorrent than those of recent vintage. Also unpersuasive is the argument that it makes no difference to LILCO how it is reimbursed since its total reimbursement would be the same no matter what accounting method was used. What is pertinent is that thousands of LILCO customers deriving no benefit from local gross revenue taxes, have nonetheless been saddled with such taxes in the form of rate increases for many years. According to the respondent Town of Islip, and not controverted by appellant, 75% of the population in LILCO's service area in Nassau and Suffolk Counties resides in towns, villages and cities which do not impose a gross revenue tax (see *Lotto v Long Is. Light. Co.,* 80 Misc 2d 8).

Furthermore, LILCO itself seems to be aware that its past actions in this area have been discriminatory. This is evidenced by the following statement contained in an earlier decision in this case by Mr. Justice Di Paola, involving the class action *(Lotto v Long Is. Light. Co.,* 80 Misc 2d 8, 14, *supra):* "The local municipal taxes on the other hand, if treated as an expense of the entire system for rate making purposes, have the effect of increasing rates for users of the system who do not reside in cities or villages imposing a tax (and for users of smaller taxing municipalities in the service area as compared with larger taxing units) and who are in no way responsible for the tax expense. *The court agrees with LILCO that this produces an unjust and unreasonable result and that a court should avoid a statutory construction that*

*results in such injustice and seeks a more reasonable interpretation"* (emphasis supplied).

Thus, LILCO had advanced incompatible arguments in the same case and, amazingly, has prevailed on each. In the class action branch of the case it successfully maintained that charging off the cost of local gross revenue taxes to all of its customers (which LILCO did for more than 30 years) would be *unjust* and unreasonable; whereas in the cross claim by the intervenor Town of Islip, it has managed to convince the majority of this court that all that was involved in the 30-year span was an accounting method of treating local taxes.

The issue of whether a public utility is guilty of an unfair discriminatory practice when it passes off a portion of the cost of certain local taxes to customers living outside of the locality has been adjudicated in other jurisdictions. In *State ex rel. City of West Plains v Pubic Serv. Comm.* (310 SW2d 925, 929-930) the Supreme Court of Missouri opined, *inter alia:* "The proposition, on its face, that certain nonbeneficiary subscribers have had to pay taxes for the sole benefit of other subscribers is such that from it the commission reasonably *could have found that Western's former treatment of license and occupation taxes gave some of its customers an undue preference over other customers and that, therefore, the practice was unjustly discriminatory."* (Emphasis supplied.)

The burden of annual franchise payments by a gas and electric company has been held properly to be borne by the company's customers within that community *(City of Elmhurst v Western United Gas & Elec. Co.,* 363 Ill 144; contra *State ex rel. Pacific Tel. & Tel. Co. v Department of Public Serv. of Washington,* 19 Wn 2d 200, 276-282).

"Manifestly there is an element of unjust discrimination in allowing one community to levy and collect from respondent or any public utility engaged in business throughout the state an occupation tax which in turn the utility would collect by a statewide increase in rates" *(State ex rel. Pacific Tel. & Tel. Co. v Department of Public Serv., supra,* p 277). Excise taxes levied by a city should be reflected within that community *(id.,* pp 274-278).

I am also of the opinion that when read in conjunction with the provisions of section 186-a of the Tax Law, the language set forth in subdivision 1 of section 5-530 of the Village Law (which is similar to the language employed in section 20-b of the General City Law) that "[a] tax imposed pursuant to this

section *shall have application only within the territorial limits* of any such village" (emphasis supplied), circumscribes reimbursement for such taxes from customers located in the village which imposes the tax and benefits from it. In subdivision 3 of section 5-530 (and, similary, in section 20-b of the General City Law), it is provided that "[a]ll of the provisions of section one hundred eighty-six-a of the tax law, *so far as the same are or can be made applicable, with such limitations as are set forth in this section, and such modifications as may be necessary in order to adapt such taxes to local conditions shall apply to the taxes authorized by this section"* (emphasis supplied). Subdivision 12 (renumbered 7) of section 186-a of the Tax Law provides: "The tax imposed by this section shall be charged against and be paid by the utility and *shall not be added as a separate item to bills rendered by the utility to customers or others but shall constitute a part of the operating costs of such utility"* (emphasis supplied).

Thus, in my opinion, the specific direction in section 5-530 of the Village Law that a local revenue tax "shall have application only within the territorial limits of any such village", together with the failure of the Legislature to provide that such tax "shall constitute a part of the operating costs of such utility" (as was provided in section 186-a of the Tax Law), evinces a legislative intent to limit reimbursement solely from citizens of the locality which levied the tax.

I disagree with the majority's and LILCO's conclusion that the above language of section 5-530 of the Village Law, to wit, the tax "shall have application only within the territorial limits of any such" village (or city), merely defined the scope of the tax and that this was clarified by the succeeding sentence, to wit: "This section shall not authorize the imposition of a tax on any transaction originating or consummated outside of the territorial limits of any such village [or city]". I agree that the second sentence clearly indicates that the tax cannot apply to revenue originating outside of the taxing municipality's territorial limits. However, when the majority and LILCO assert that this sentence merely clarifies the earlier one (requiring that the tax shall have application only within the territorial limits of the village or city imposing the tax), they are in effect arguing that the Legislature said something twice when it only had to say it once. Such a construction is clearly contrary to an established rule of statutory interpretation, to wit, that a construction of a stat-

ute should be avoided which would result in futility or redundancy (see *Wirtz v Cascade Employer's Assn., Inc., of Practice Northwest*, 219 F Supp 84; *Singer v United States*, 323 US 338; 82 CJS, Statutes, § 326). A redundancy should not be easily attributed to a legislative body if another interpretation is possible (cf. *Singer v United States, supra*).

Furthermore, closer analysis of subdivision 12 (renumbered 7) of section 186-a of the Tax Law reveals a legislative intent to include a State-wide tax in the general operating expense and that payment of the tax be spread among all of the utility's customers. This same system is illogical when applied to taxes with only local application and which different municipalities may assess at different rates.

I therefore agree with Special Term's determination that under the statutes in question (Village Law, § 5-530; General City Law, § 20-b) village and city revenue taxes imposed on a utility must be collected only from the utility's customers located in the municipality which imposes the tax and benefits from it. I also concur in Special Term's second conclusion that a hearing should be had to ascertain whether the statutes should be applied retroactively so as to permit Islip to recover from LILCO moneys paid by it and its residents for gross revenue taxes imposed by other municipalities. Issues such as whether LILCO acted in good faith during the 30-year period involved and the effect of no objections having been made during that period, would be relevant at such a hearing.

MARTUSCELLO, J. P., and O'CONNOR, J., concur with SHAPIRO, J.; TITONE, J., dissents and votes to affirm the order insofar as appealed from, with an opinion.

Order of the Supreme Court, Suffolk County, entered January 8, 1976, reversed insofar as appealed from, on the law, with $50 costs and disbursements, and motion by defendant to dismiss the cross claim of the intervenor-defendant granted.