Arnold L. Fein, J.
In the action entitled Western Union Telegraph Company (Western) v RCA Global Communications, Inc., (Global), assigned to I. C. Part 9, Western moves for an order pursuant to CPLR 3211 (subd [b]) dismissing affirmative defenses fourth through eighth in Global’s verified answer. Global cross-moves for summary judgment dismissing both causes of action pleaded by Western.
Prior to submission, counsel informed the court of the pendency of three other actions commenced by Western *966 against other carriers, all raising common issues of law and fact, in which similar motions were about to be made. The other actions, Western Union Telegraph Company v TRT Telecommunications Corp.; Western Union Telegraph Company v ITT World Communications, Inc.; and Western Union Telegraph Company v Western Union International, Inc., had been assigned to other I.C. parts. In each action, except Western v TRT Telecommunications, issue had been joined. By stipulation dated December 31, 1973, counsel for all parties agreed that the issues of law and fact in all the actions are predominantly common issues and that the actions are "re: lated” within the meaning of subdivision 9-c of order 636.2 of the Rules of the Supreme Court (22 NYCRR 636.2). By consent order dated January 30, 1974 the actions were transferred to I. C. Part 9.
Western then moved to strike the third, fourth, fifth and seventh affirmative defenses interposed by ITT World Communications, Inc., (ITT) and defenses third through eighth interposed by defendant Western Union International, Inc. (WUI).
Defendants ITT and WUI by separate applications joined Global’s motion to dismiss the complaint.
All motions are consolidated and treated together for disposition.
All of the parties are common carriers of communications, subject to regulation under the Communications Act of 1934 (US Code, tit 47, § 151 et seq.). Each defendant is an international record carrier of communications between the United States and foreign points. Western is the sole supplier of public domestic teleprinter exchange services, designated as domestic TWX and domestic Telex.
Western’s complaint asserts two causes of action. The first seeks to recover the reasonable value of such teleprinter communication services rendered to defendants. The second seeks to recover for such services based upon a public tariff filed with the Federal Communications Commission. Defendants assert similar affirmative defenses upon which each bases its argument that the complaint should be dismissed. Western’s motion for summary judgment in each action is addressed to these affirmative defenses.
In substance, defendants’ basic contention is that the issues raised in all of the actions are within the context of the regulatory scheme embodied in the Federal Communications Act and are consequently within the jurisdiction of the Fed *967 eral Communications Commission (FCC), requiring Western to proceed only before that forum. In sum defendants urge dismissal on the ground that (1) Western has failed to exhaust its administrative remedies, and (2) primary jurisdiction is vested in the FCC.
As to the defendant Global, Western seeks a dismissal of defenses fourth through eighth. Defenses numbered fourth through sixth plead that the tariff under which Western seeks a recovery is invalid, as here sought to be applied, in that it does not apply to Global because it has not been approved by the FCC for the teleprinter services involved. Global’s seventh defense is that the FCC has not determined or approved either the division of rates or through routes for the services rendered by plaintiff. Global’s eighth defense pleads that (1) Western has failed to exhaust its administrative remedies; (2) primary jurisdiction over the causes pleaded by plaintiff rests with the FCC; and (3) a prior unresolved proceeding is pending before the FCC in which the applicable rates can be determined. With respect to ITT, Western has moved to dismiss the affirmative defenses numbered third, fourth, fifth and seventh. However, by reason of the affirmative statement made by ITT that its fifth defense pleads the defense of payment and not accord and satisfaction Western has withdrawn so much of its motion as is addressed to the fifth defense.
ITT’s third, fourth and seventh defenses are substantially the same as the defenses asserted by Global.
Western’s motion addressed to WUI’s answer seeks to have stricken affirmative defenses fourth through eighth, substantially the same as the affirmative defenses pleaded by Global and ITT.
On the surface, it appears that Western has premised its right to recover upon two relatively uncomplicated causes of action. However, it is abundantly clear that the historical relationship among the parties to these lawsuits and the assigned role of the FCC in overseeing and regulating their operations cannot be overlooked or disregarded in determining the jurisdiction and competence of the Supreme Court to entertain and determine these actions.
It cannot be disputed that all of the parties to the multiple actions are common carriers of communications and, as such, subject to regulation under the Communications Act of 1934. Each is engaged primarily in processing communications in record form, i. e., telegraph and teletype messages. Western *968 handles communications between various points within the United States. The defendants provide services between foreign countries and four areas in the United States called gateway cities. Defendants as overseas carriers provide the links between the domestic system operated and maintained by Western in this country and compatible systems in foreign countries.
As stated in section 1 of title I, the Communications Act of 1934 established the Federal Communications Commission: "For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges”. (US Code, tit 47, § 151.)
Subdivision (a) of section 201 of title II of the act, which governs the operations of all communications common carriers, provides in part: "(a) It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor; and, in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest, to establish physical connections with other carriers, to establish through routes and charges applicable thereto and the division of such charges”. (US Code, tit 47, § 201, subd [a].)
Consonant with the statutory regulatory scheme developed pursuant to the Communications Act, it is evident that the evolution of Western as the primary domestic carrier and the requisite interconnection of its services with the overseas teleprinter facilities of the international carriers and the determination of their respective rate structures proceeded for the most part by agreement between the parties under the watchful eye of the FCC. From time to time, either as a result of complaints filed by one or more of the parties or on its own initiative, the FCC has conducted inquiries into the relationships and operating practices of these carriers (see Matter of American Tel. & Tel. Co., 19 FCC2d 711, 727; Matter of Western Union Tel. Co., 27 FCC2d 515; Matter of Western Union Tel. Co., 30 FCC 2d 617). Moreover, it appears that on more than one occasion the parties have attempted to raise, before the FCC, some of the issues involved in these actions.
*969 The actions brought by Western are to recover rates alleged to be fair and reasonable for the purported use of its TWX and Telex services by the defendant carriers. Defendants argue that the charges Western seeks to recover are not fair and reasonable and that, in any event, resolution of this question as well as others raised is solely the province of the FCC. It is patent that the subject matter of these actions involves a public interest and bears directly upon the transmission and reception of record communication between the United States and foreign countries. Congress long ago foresaw the need to employ the talents and expertise of one agency to insure the smooth and continuous operation of record communications. To permit one or more carriers to proceed before a State court to resolve differences which could materially affect the operation of the entirety of such communication services would run counter to the pervasive scheme embodied in the Communications Act.
The charges or rates which defendants have been paying Western for TWX and Telex services were long governed by agreement. These agreements were originally made by AT&T, Western’s predecessor in interest, and the various international record carriers. Such agreements were renewed from time to time and were extended by Western after it acquired the TWX service and Telex service from AT&T. However, Western terminated these agreements effective April 1, 1973. Western now claims that its public tariff, FCC No. 258 filed with the FCC, providing for substantially higher rates for TWX domestic services, now governs the rates the defendants are required to pay for such services. Accordingly, under the second cause of action Western claims that the defendants are liable for the charges incurred under tariff No. 258 from April 1, 1973.
Defendants claim that this tariff is inapplicable to them because it covers only domestic services, and that it is illegal to require them to pay such rates. In part defendants rely upon the prior agreements as demonstrating the mutual recognition of the parties that the filed tariff does not apply to the interconnected services.
Western contends that the agreements were voluntary and terminable and that the issue as to the applicability of tariff No. 258 to the defendants has previously been decided adversely against the defendants in a prior proceeding, Docket No. 15011, before the FCC. However in that proceeding, which *970 authorized an increase in the TWX tariff rates of AT&T, Western’s predecessor, the final opinion and order of the commission, Matter of American Tel. & Tel. Co. (19 FCC2d 711, 715), stated: "We conclude that the recommended decision properly disposes of the claims made by the international telegraph carriers for a separate, special TWX classification of service for them. The international telegraph carriers have not sustained their burden of showing that a separate, special class of TWX service for them would be just and reasonable within the meaning of section 201(b) of the act or free of undue discrimination or preference within the meaning of section 202(a) of the act. We are aware of some of the problems related to the rendition of international telex service through the use of domestic TWX service. Therefore, our conclusions herein should not be construed as a ñnding that the contentions of RCAC and WUI made herein do not raise appropriate considerations for treatment in connection with the establishment of through routes and division of charges under section 201(a) of the act. ” (Emphasis supplied.)
A fair reading of the opinion and order does not support Western’s contention that Western’s public tariff No. 258 is applicable, because no "separate special TWX classification of service” has been made for the international record carriers. Nor does it support defendants’ argument that Western is limited by the agreed upon rates based upon AT&T’s TWX tariff rates approved by the FCC in that docket. Palpably, the commission was reserving the issue of fixing the charges for a through route and division of charges proceeding, if the carriers could not agree on such rates or division of charges. However, this determination and reservation can hardly be construed as a prohibition or inhibition against termination of the agreements by Western.
If Western could lawfully terminate the agreements, which apparently is not disputed, there is manifestly a question of how the rates or charges by Western are to be determined. Western is required to render such services to the international record carriers and the carriers can only obtain such service from Western Union, pursuant to the commission’s orders. In this sense the relationships between the international carriers and Western are not voluntary. However, the fact that the services are neither rendered nor received on á voluntary basis does not mean that they are rendered without an obligation to pay for them. Nor does it mean that the *971 charges to be made are limited by the terms of a terminated contract, albeit such contract might provide some evidence as to the appropriate rate. It now appears to be conceded that payment by the international record carriers of the contract rate in and of itself does not bar quantum meruit recovery in the absence of an accord and satisfaction, not pleaded.
Western has rendered service and has continued to render service. Defendants have received and are receiving such service. Palpably it is understood by all that Western is entitled to be paid for such service. In this sense quantum meruit is a classic remedy. This disposes of the contention of some of the defendants that a cause of action in quantum meruit is not stated.
However, it is abundantly clear that a determination of the reasonable value of the services rendered by Western to the defendants, in accordance with usual quantum meruit procedures, would entail a full-scale rate-making hearing in a field which Congress has appropriately reserved for the FCC. The court has neither the competence nor the expertise nor the facilities for such a hearing. On such a hearing it may well be appropriate to consider the rates authorized or approved for this service as compared with other kinds of service rendered by Western as well as the international record carriers. Moreover, it is apparent that the term "reasonable” as applied to the fixation of rates by an administrative agency involves considerations far different than those comprehended by the term "fair and reasonable” when applied in fixing the measure of damages in State court common-law actions.
No useful purpose would be served by granting summary judgment to the plaintiff where the proof upon an assessment would be identical with the proof required upon a trial of the issues as presented by the pleadings.
However the issue is not one of exhaustion of administrative remedies as extensively argued by all of the defendants. That doctrine applies where there is an administrative apparatus designed to resolve issues and make determinations requiring special expertise and court action is limited to review of such proceedings upon a restricted basis. This court, a State court, is without power to review determinations of Federal administrative agencies, albeit it may be empowered to determine their applicability to disputes over which the court has jurisdiction. It would appear that if the appropriate rates or division of charges had been made by the FCC, this court *972 would have jurisdiction to enforce a suit brought to collect such rates or charges, upon failure of payment if jurisdiction over the parties were obtained. There is nothing in the subject matter which precludes enforcement in a State court, other than its lack of capacity to fix rates. Accordingly the question is not failure to exhaust administrative remedies. It is rather that the issues are such that as a matter of primary jurisdiction resolution is appropriate for the FCC.
These same considerations are also applicable with respect to the second cause of action. Whether tariff No. 258, filed by Western, is applicable to the interconnected TWX service rendered by Western to the international record carriers involves the resolution of disputes, factual determinations and rate-making procedures which preclude summary determination as requested by Western in that part of its motion based on the second cause of action. Such factual determinations are, as a matter of primary jurisdiction, appropriate to the FCC, the agency vested with the authority and expertise to resolve such conflicts among common carriers. Included in such inquiry are questions whether plaintiff is a "merged carrier”, as alleged by defendants and whether what is involved are "through routes” and "division of charges”, rather than appropriate rates for services similar to those provided to domestic users. There may also be required a policy determination as to the relationship of the rates for such services to the total pattern of rates and income of the carriers in the context of developing or nurturing the growth of particular types of service. These policy considerations are appropriate to an administrative agency not a court.
Accordingly, plaintiff’s motion in each case is denied.
However this does not entitle defendants to dismissal. Although primary jurisdiction is vested in the FCC, this does not require dismissal of the actions. Dismissal might well bar recovery by the plaintiff on Statute of Limitations’ grounds should the FCC determine that the contract rate is no longer applicable and that tariff No. 258 or some other formula, warranting increased charges, is appropriate. It is unnecessary now to determine whether such FCC action could or will be made retroactive. Such conclusion now would be premature. Whatever the determination by the FCC, it will be time enough to move for appropriate relief upon the basis of and after such determination. Accordingly jurisdiction of the actions is retained and defendants’ motions are granted to the *973 extent only of referring the subject matter of the actions commenced by Western to the FCC as a matter of primary jurisdiction.