OPINION OF THE COURT
Myriam J. Altman, J.
Defendant, the Western Union Telegraph Company (Western Union), moves pursuant to CPLR 3211 (subd [a], par 2) to dismiss the complaint herein for lack of subject matter jurisdiction. The complaint, in this action commenced by Western Union International, Inc. (WUI), seeks (1) a judgment declaring valid and enforceable a noncom-petition clause of a contract entered into between defendant and a corporation not a party to this action; (2) an injunction prohibiting defendant from offering certain services alleged to be in violation of the noncompetition clause; and (3) costs and disbursements.
Both plaintiff and defendant are common carriers of record communications and, as such, are regulated by the Federal Communications Commission (FCC) pursuant to *79 the Communications Act of 1934 (US Code, tit 47, § 151 et seq. [Communications Act]). Plaintiff provides international communications service, while defendant is primarily a domestic carrier.
Prior to 1943, defendant was engaged in both domestic and international communications operations. In that year, defendant was permitted to merge with its principal domestic competitor upon condition that Western Union divest itself of all international operations. To accomplish this divestiture, defendant entered into the contract which is the subject of this litigation. That agreement between defendant and an investment banking and underwriting corporation provided for the formation of plaintiff corporation. Pursuant to the contract and its amendments, Western Union transferred all of the assets previously used in its international operations to WUL
Section 2.18 of the agreement provides, inter alia: “Western Union agrees that for a period of 25 years after the Closing Date it will not compete, either directly or indirectly, by wire, radio or other means of communication, now or hereafter existing, with the Cable System in international telegraph operations [as defined from time to time in the Communications Act].” Plaintiff, alleging standing as a third-party beneficiary of the contract, claims a breach of this covenant against competition. The time frame is based upon the allegation that the closing date of the agreement was September 30,1963, and that therefore, the covenant against competition is effective through September 30, 1988.
The substantive allegations of the complaint concern two separate services, one recently offered by defendant and the other proposed by defendant. Plaintiff claims that in or about September, 1979, defendant began its Western Union International Telex Service (WUITS), now apparently called Low Cost Routing Service (LCR). For this operation, defendant forwards communication to either a Canadian or a Mexican carrier which, in turn, transmits to various overseas points. Plaintiff further alleges that on or about February 25, 1980, defendant announced its intention to provide direct international service, eliminating the use of the Canadian and Mexican carriers, and that defen *80 dant is engaged in negotiations with foreign countries concerning this service. These actions form the basis for the claimed breach of the noncompetition covenant of the agreement.
On this motion, defendant argues that the FCC has primary jurisdiction of plaintiff’s claims and that, consequently, this court should dismiss the complaint. “Primary jurisdiction situations arise when the original jurisdiction of a court is being invoked to decide the merits of a controversy: the facts, the law, the relief; and it is held that the jurisdiction of the court either to decide one of the relevant issues or to entertain the action at all has been superseded by agency jurisdiction” (77 Harv L Rev 1037, 1038). Thus, the entire action or one or more issues may be referred to the relevant agency. Although this is a contract action, defendant contends that a resolution of the controversy requires the expertise of the FCC in that the action involves matters of Federal concern, including statutory and regulatory interpretations and communications policy. In addition, defendant points to the fact that the contract itself provides that the term “international telegraph operations” is to be “defined from time to time in the Communications Act”. Given the broad authority of the FCC in the communications field, defendant argues, this court should defer to the jurisdiction of the FCC.
In response, plaintiff contends that the adjudication of contractual rights is a matter within the expertise and the competence of the court. Alternatively, plaintiff argues that to the extent the doctrine of primary jurisdiction is applicable to certain issues in this case, the FCC’s position is clear and referral to the agency is thus unnecessary.
The doctrine of primary jurisdiction is “concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties” (United States v Western Pacific R.R. Co., 352 US 59, 63). There is no fixed formula governing the application of the doctrine to the facts of a particular case. Rather, the court must determine, in each case, whether the reasons for the doctrine are present and whether the purposes of the doctrine will be served by its application (United States v Western Pacific R.R. Co., supra, p 64).
*81 The reasons for the development of the doctrine are essentially twofold: a need for the expertise and specialized knowledge of an administrative agency and a need for consistency and uniformity in an industry which is nationally regulated (Far East Conference v United States, 342 US 570; Texas & Pacific Ry. v Abilene Cotton Oil Co., 204 US 426).
The need for administrative expertise is most apparent in a case involving the interpretation of words used in their technical sense where extrinsic evidence is required to determine their meaning (United States v Western Pacific R.R. Co., 352 US 59, supra; Great Northern Ry. v Merchants Elevator Co., 259 US 285). Here, the phrase “international telegraph operations” is certainly not used in its ordinary sense, as recognized by the very terms of the contract. Its interpretation requires technical expertise not possessed by a State court.
The Communications Act (US Code, tit 47, § 222, subd [a], par [6]) defines “international telegraph operations” as the “acceptance, transmission, reception, and delivery of record communications by wire or radio which either originate or terminate at points outside the continental United States, Alaska, Canada, Saint Pierre-Miquelon, Mexico, and Newfoundland, but does not include acceptance, transmission, reception, and delivery performed within the continental United States between points of origin within and points of exit from, and between points of entry into, and points of destination within, the continental United States with respect to such communications, or the transmission within the continental United States of messages which both originate and terminate outside but transit through the continental United States.” This statutory definition has been interpreted by the FCC, subject to the review of the Federal courts (Matter of Western Union Tel. Co., 75 FCC2d 461, revd sub nom. ITT World Communications v Federal Communications Comm., CCA2d, Aug. 25, 1980, Mansfield, J.; Western Union Int. v Federal Communications Comm., 544 F2d 87, cert den sub nom. Western Union Tel. Co. v Western Union Int., 434 US 903). To insure uniformity of interpretation, the question of whether certain activities constitute “international telegraph operations” is more appropriately left to the FCC.
*82 However, with respect to the LCR service offered by defendant, a determination has already been made that such service constitutes “international telegraph operations” (ITT World Communications v Federal Communications Comm., supra). Pursuant to the afore-mentioned section 222 of the Communications Act, defendant, a merged carrier, is prohibited from engaging in “international telegraph operations”. On review of an FCC order, the Second Circuit Court of Appeals held that Western Union was in violation of the Communications Act because it was engaging in “international telegraph operations” by providing LCR service. Although that litigation involved a claimed statutory rather than contractual violation, a clear definition of “international telegraph operations” as encompassing the LCR service has emerged. Under such circumstances, it is unnecessary to refer this issue to the FCC pursuant to the doctrine of primary jurisdiction because the issue has already been resolved (Schwartz v Bowman, 244 F Supp 51, affd sub nom. Schwartz v Eaton, 360 F2d 211, cert den 385 US 921; World Airways v Northeast Airlines, 349 F2d 1007, cert den 382 US 984) and this court, therefore, has the benefit of the Federal decision (Agar Food Prods. Co. v Chicago Riv. & Indiana R.R. Co., 358 F Supp 1312, affd 529 F2d 529).
With respect to the direct international service proposed by defendant, there is an application pending before the FCC in which Western Union requests authority pursuant to the Communications Act to provide such service. The question of whether such service constitutes “international telegraph operations” as contemplated by the Communications Act should thus be determined by the FCC in the first instance. A strong case exists for the application of the doctrine of primary jurisdiction when, as here, a proceeding is pending before the administrative agency (Federal Power Comm. v Louisiana Power & Light Co., 406 US 621; Mississippi Power & Light Co. v United Gas Pipe Line Co., 532 F2d 412, cert den 429 US 1094).
In its complaint, plaintiff raises the issue of the reasonableness of the 25-year term of the noncompetition covenant, alleging that such terms are both reasonable and customary in the industry. WUI claims, in opposition to *83 this motion, that the reasonableness of this covenant can be determined in accordance with New York law governing agreements not to compete made in connection with the sale of business. What remains, therefore, is a determination as to whether this court is competent to determine the reasonableness of the 25-year covenant against competition. In determining this issue “it is abundantly clear that the historical relationship [between the parties] and the assigned role of the FCC in overseeing and regulating their operations cannot be overlooked or disregarded” (Western Union Tel. Co. v RCA Global Communications, 83 Misc 2d 964, 967).
While plaintiff portrays this lawsuit as an “ordinary” contract action, the subject matter of the contract — the divestiture of Western Union — has progressed “under the watchful eye of the FCC” (Western Union Tel. Co. v RCA Global Communications, supra, p 968). On its face, the noncompetition clause herein appears to be an embodiment of existing regulatory policy as enunciated by both the FCC and the courts (Matter of Western Union Tel. Co., 75 FCC2d 461, revd sub nom. ITT World Communications v Federal Communications Comm., CCA2d, Aug. 25, 1980, Mansfield, J. supra). This action does not, therefore, involve the litigation of a noncompetition clause of an ordinary business contract, but rather it involves litigation which may have national regulatory policy implications.
There is a pronounced desirability in obtaining an agency determination where the subject matter of the litigation involves an industry which is subject to pervasive regulation (see Pan Amer. World Airways v United States, 371 US 296; Foremost Int. Tours v Qantas Airways, 525 F2d 281, cert den 429 US 816; Carter v American Tel. & Tel. Co., 365 F2d 486, cert den 385 US 1008; 77 Harv L Rev 1037, 1040-1041, 1050), particularly where, as here, both parties are subject to the jurisdiction of the agency. “When legal disputes develop that directly affect an industry subject to regulation, the need arises to integrate the regulatory agency into the judicial decision making process. One method to accomplish integration is to have the agency pass in the first instance on those issues that are within its competence. In short, the agency should have the *84 first word” (Mississippi Power & Light Co. v United Gas Pipe Line Co., 532 F2d 412, 417, cert den 429 US 1094, supra).
However, the policy of the FCC and the Federal courts concerning Western Union’s involvement in international telegraph operations has been enunciated. While the specific issue of the reasonableness of the contract clause herein has not been litigated, the decisions which hold that Western Union should not be engaged in international telegraph operations indicate that it is not unreasonable to prohibit competition at this time (ITT World Communications v Federal Communications Comm., supra; Western Union Int. v Federal Communications Comm., 544 F2d 87, cert den sub nom. Western Union Tel. Co. v Western Union Int., 434 US 903, supra.) The agency and the Federal courts, in effect, have spoken and a referral of this issue to the FCC is thus unnecessary (Schwartz v Bowman, 244 F Supp 51, affd sub nom. Schwartz v Eaton, 360 F2d 211, cert den 385 US 921, supra; World Airways v Northeast Airlines, 349 F2d 1007, cert den 382 US 984, supra). This court is competent to apply this Federal policy to the instant case following FCC action on Western Union’s pending application. The application of Federal policy will eliminate any potential conflict or inconsistency between the State judiciary and the FCC.
Plaintiff’s final contention that it was the intention of the parties to the contract to prohibit defendant from engaging in any activities — international or domestic — which would constitute competition with WUI’s international operations is merely an ancillary issue. To the extent that this issue may become relevant to the litigation, this court is competent to resolve the issue. A determination of the intention of the parties to this contract does not require the expertise of the FCC. It is a matter within the ordinary experience of this court. It is perfectly appropriate under these circumstances for a court to refer certain issues to an administrative agency, while retaining jurisdiction over others (77 Harv L Rev 1037, 1038; see, also, Far East Conference v United States, 342 US 570, 574, supra).
*85 The foregoing is entirely consistent with the Communications Act (US Code, tit 47, § 414) which provides: “Nothing in this chapter *** shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.” Thus, actions in contract may be maintained provided they are not totally inconsistent with the act (Texas & Pacific Ry. v Abilene Cotton Oil Co., 204 US 426, supra). Any contractual relief to which the plaintiff may be entitled can be provided by this court after the FCC makes the necessary preliminary decisions.
Accordingly, defendant’s motion is granted to the extent of staying the proceeding pending determination of the issues presently before the FCC. Jurisdiction is retained in this court for all other purposes.