Mycklebust v Consolidated Edison Co. of N.Y., Inc. (2024 NY Slip Op 50837(U))

[*1]

Mycklebust v Consolidated Edison Co. of N.Y., Inc.

2024 NY Slip Op 50837(U)

Decided on June 29, 2024

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 29, 2024
Supreme Court, New York County

Scotto Mycklebust, individually and on behalf of all others similarly situated, Plaintiffs,

against
Consolidated Edison Company of New York, Inc., Defendant.

Index No. 652679/2023

Counsel for Plaintiff: Douglas Gregory Blankinship, Esq., and Erin Raye Kelley, Esq., of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP
Counsel for Defendant: Michael Scheinkman, Esq., Craig Jacob Bergman, Esq., Frances E. Bivens, Esq., and Caroline Paige Whitaker, Esq., of Davis Polk & Wardwell LLP

Anar Rathod Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 41 were read on this motion to/for DISMISS. 
On June 18, 2024, the Court held oral argument on the instant motion filed by Defendant Consolidated Edison Company of New York, Inc. ("Con Ed" or "Defendant") seeking to dismiss the Second Amended Class Action Complaint ("SAC") filed by Plaintiff Scotto Mycklebust and on behalf of other similarly situated individuals ("Plaintiffs"). NYSCEF Doc. No. 53 (6/18/24 Tr.). Based upon the papers filed in connection with this motion, oral argument, and for the reasons as set forth below, Defendant's motion is GRANTED to the extent of staying this action pending the filing and determination of a complaint, if any, filed by Plaintiffs with the Public Service Commission ("PSC" or the "Commission").
Relevant Factual and Procedural History
The present case arises from Con Ed's imposition of a $100 "no-access" fee when it is unable to install new electric remote meters, or smart meters, in customer homes and businesses due to a customer's failure to provide access. Smart meters allow Con Ed to make meter readings remotely, thereby obviating the need for in-person meter readings. In approximately [*2]2017, Con Ed began installing smart meters to replace existing electric/gas meters as part of a large-scale initiative, sanctioned by the PSC. While customers may opt out of the installation of a smart meter, Con Ed maintains that it may charge a $100 no-access fee when Con Ed cannot access the service premises to install the smart meter. 
In this case, on or about February 27, 2023, Plaintiff Scotto Mycklebust, a Con Ed customer, received a letter from Con Ed stating that a nonparty subcontractor attempted to visit Plaintiff to install a smart meter. SAC at ¶ 18 (NYSCEF Doc. No. 25).[FN1]
 Said letter notified Plaintiff Mycklebust that, due to Defendant's subcontractor being unable to enter the premises, he would be charged a $100 no-access fee on his next utility bill. Id. Plaintiff Mycklebust states that he was not preemptively notified of the visit. Id. at ¶ 19. Plaintiff Mycklebust's utility bill for the billing period of February 6 to March 8, 2023, included a $100 "adjustment" and stated, "[t]he Adjustments [sic] amount includes a no-access fee of $100.00 because we were not given access to install a smart meter." Id. at ¶ 21. Plaintiff Mycklebust paid the bill in its entirety. Id.
Plaintiffs commenced the present action by the filing of Summons and Complaint on June 2, 2023, seeking to launch a class action lawsuit against Con Ed in connection with the $100 adjustment, or no-access fee, imposed as a result of Con Ed being unable to install smart meters at Plaintiffs' service premises. NYSCEF Doc. No. 1. On September 29, 2023, Plaintiff filed the SAC. NYSCEF Doc. No. 25.[FN2]
Plaintiffs allege that Defendant's conduct is "unlawful and was imposed on tens of thousands (if not more) of other Con Ed customers," and therefore Plaintiff Mycklebust brings "this case on his own behalf and on behalf of a Class of similarly affected consumers." Id. at ¶ 22. Specifically, Plaintiffs allege that pursuant to Public Service Law § 65(6), Con Ed may only charge installation fees for smart meters if the customer requests a new meter, and pursuant to Public Service Law § 65(9), the imposition of a fee is limited to instances where a customer hinders the inspection or examination—not the installation—of a meter. Id. at ¶¶ 9—10. Plaintiffs further allege that Section 13.1 of Con Ed's Electric Tariff only authorizes a $100 fee when a customer prevents the inspection and examination of a meter. Id. at ¶¶ 11—13. Accordingly, Plaintiffs allege causes of action for the violation of New York General Business Law (GBL) § 349 for deceptive and fraudulent billing practices, breach of contract for violations of Con Ed's Electric Tariff and New York Public Services Law § 65, and unjust enrichment. 
On October 30, 2023, Defendant filed the instant motion to dismiss the SAC. NYSCEF Doc. Nos. 28—33. Defendant argues that this matter should be dismissed under the primary jurisdiction doctrine because Plaintiffs' claims require the interpretation of Con Ed's Electric and Gas Tariffs, which necessitates the special expertise and agency views of the PSC. Defendant asserts that the "very tariff question presented here was already litigated by others before the PSC" thereby "creating binding authority on Con Edison." Def. Mem. in Reply at 6 (NYSCEF [*3]Doc. No. 37). Defendant further argues that Plaintiffs' claims are precluded by the "filed rate doctrine," which bars challenges to tariff-authorized charges and related practice in court. Finally, Defendant asserts that should the Court reach the merits of Plaintiffs' claims under GBL § 349, those claims independently fail on the merits.
This matter was originally assigned to the Honorable Andrea Masley of the New York County Commercial Division, who recused herself pursuant to Judiciary Law § 14; 22 NYCRR 100.3(E)(1)(c); 22 NYCRR 100.3(E)(2); and 22 NYCRR 100.0(D). NYSCEF Doc. No. 41. This matter was subsequently reassigned to the present Court (J. Patel).
Legal Discussion
The primary jurisdiction doctrine requires this Court to consider whether it should defer to the PSC as the appropriate forum to adjudicate this dispute.
The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties . . . "Primary jurisdiction," . . . comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.
U.S. v. W. Pac. R.R. Co., 352 U.S. 59, 63—64 (1956); see also Cap. Tel. Co., Inc. v. Pattersonville Tel. Co., Inc., 436 N.E.2d 461, 466 (NY 1982) (the doctrine is "intended to co-ordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned"). "It is for the court to determine whether the doctrine is triggered by issues presented in a lawsuit and, if so, to refer such issues for the agency's resolution." Staatsburg Water Co. v. Staatsburg Fire Dist., 527 N.E.2d 754, 758 (NY 1988).
 
The Court also considers whether Plaintiffs' claims are independently precluded by the filed rate doctrine, which confines the adjudication of claims seeking "relief for an injury allegedly caused by the payment of a rate on file with the regulatory commission" to the appropriate agency. Porr v. NYNEX Corp., 230 AD2d 564, 568, 573—574 (2d Dept. 1997). The filed rate doctrine extends to "'classifications, practices, and regulations affecting such charges,'" because rates "do not exist in isolation," but are part of a broader framework of services and billing. Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc., 524 U.S. 214, 223 (1998).
Here, the threshold issue is whether Defendant is permitted to charge consumers for failing to grant access to Defendant to install smart meters pursuant to Public Service Law §§ 65(6) and (9). If an additional charge is found to be permissible, then the tribunal must determine what is the reasonable amount to charge pursuant to Defendant's filed tariff. The issues here, then, are ones of statutory interpretation and contractual/tariff interpretation that are appropriately reserved for the PSC. Likewise, the issues here implicate a filed rate—contained in Electric Tariff § 13.1.
The Court acknowledges that matters of pure statutory interpretation do not automatically necessitate deferral to the respective agency under the primary jurisdiction doctrine. See, e.g., Kovarsky v. Brooklyn Union Gas Co., 18 N.E.2d 287 (NY 1938) ("The important question here is the interpretation to be placed on the term 'service charge' as used in the statute in its application to the particular charge here in question."); Mykolin v. Consol. Edison Co. of New York, 389 N.Y.S.2d 996 (NY Sup. Ct. 1976) ("Questions of statutory construction concerning [*4]the validity of a charge by a public utility, as distinguished from the reasonableness of the charge, may be raised by direct application to the court."). However, "[w]here the interpretation of a statute involves specialized 'knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,' the courts should defer to the administrative agency's interpretation unless irrational or unreasonable." KSLM-Columbus Apartments, Inc. v. New York State Div. of Hous. and Cmty. Renewal, 835 N.E.2d 643, 647 (NY 2005) (quoting Kurcsics v. Merchs. Mut. Ins. Co., 403 N.E.2d 159, 163 (NY 1980)). Further, "a matter of statutory interpretation, is governed by the rule that 'where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited.'" Am. Tel. & Tel. Co. v. State Tax Comm'n, 462 N.E.2d 1152, 1155 (NY 1984) (internal citations omitted). 
Plaintiffs argue that this Court is charged with "[d]etermining whether Con Edison's conduct is permitted" by interpreting Public Service Law § 65(6) and "words like 'installation,' 'inspection,' and 'examination.'" Pl. Mem. of Law in Opp'n at 16 (NYSCEF Doc. No. 34). The statutory language at issue here, clearly, has common meanings, definitions, and colloquial uses that permeate the standard lexicon. In the context of public utilities, however, this language and the overlap between the definitions of the words is unknown to the Court. Indeed, Defendant's filing in reply echoes the concern of the Court as Defendant rhetorically questions whether an employee or contractor of Defendant could install a smart meter without first inspecting or examining the surrounding accoutrements. Def. Mem. in Reply at 7. While the question is rhetorical, this Court lacks the factual, technical, and institutional knowledge to ascertain the answer. The PSC's expansive expertise and specialization in the topic enables the Commission to accurately interpret the statute in the context of the Commission's goals, adjudications, and orders. 
Further, the PSC is positioned to understand and account for the public policy effects of its tariffs. When a case requires the interpretation of a statute within the context of a regulatory public utility scheme, the PSC should be granted an opportunity to opine on the matter. See Riverdale Jewish Ctr. v. The Brooklyn Union Gas Co., 2023 WL 5628206 (NY Sup. Ct. 2023) ("The Tax Law cannot be construed in isolation but must be construed in the context of the extremely complex and highly detailed regulatory scheme applicable to utility service providers and the PSC-approved tariffs"); see also Riverdale Jewish Ctr. v. Consol. Edison Co. of New York, Inc., 2023 WL 7002749 (NY Sup. Ct. 2023) ("Plaintiff's request for the court to view the statement at issue in a vacuum cannot be entertained. It is not just one phrase that needs examining. If it were, and this court did as this plaintiff invites, it would upend the statutes empowering agencies' scope of authority rendering them ineffective and have courts second guess the agencies' expertise."); Major Energy Services L.L.C. v. Orange and Rockland Utilities, Inc., 2020 WL 3060876 (NY Sup. Ct. 2020) ("Because this dispute concerns both the construction and reasonableness of a utility tariff, it belongs at the regulatory agency in the first instance."). 
Plaintiff admits that interpreting Public Service Law §§ 65(6) and (9) requires an analysis of Defendant's Tariff and whether Defendant violated Defendant's Tariff. Pl. Mem. of Law in Opp'n at 12—15. In fact, the parties repeatedly point to Defendant's filed tariff and argue the terms and language present in said tariff. See, e.g., 6/18/24 Tr. at 16:22—17:19; 21:22—24:8. Indeed, to properly apply Public Service Law, this Court is forced to interpret Defendant's [*5]Tariff—a highly technical and specific contract existing in a wide and highly technical body of law. Accordingly, this Court determines that it is appropriate to defer to the PSC to adjudicate the disputes at issue.
This Court, however, maintains jurisdiction despite primary jurisdiction belonging to the PSC. Courts routinely stay matters without dismissing them pending determinations by the PSC. "The doctrine of primary jurisdiction provides that 'where the courts and an administrative agency have concurrent jurisdiction over a dispute involving issues beyond the conventional experience of judges . . . the court will stay its hand until the agency has applied its expertise to the salient questions.'" Flacke v. Onondaga Landfill Sys., Inc., 507 N.E.2d 282, 285 (NY 1987) (quoting Engelhardt v. Consol. Rail Corp., 756 F.2d 1368 (2d Cir. 1985)); see also W. Union Int'l., Inc. v. W. Union Tel. Co., 441 N.Y.S.2d 764 (NY Sup. Ct. 1981). "Court jurisdiction is not thereby ousted, but only postponed." U.S. v. Philadelphia Nat. Bank, 374 U.S. 321, 353 (1963). 
The Court does, however, wish to address Defendant's argument that the PSC has previously adjudicated that the $100 no-access fee in the context of smart meter installation is permissible. Defendant relies on a Commission Determination issued on October 21, 2013, in which the PSC determined that "the fees billed by the utility for failure by complainant to provide the utility with access to its meter are proper." Def. Ex. 1 (NYSCEF Doc. No. 35); see Case No. 10-E-0084, Appeal by Mr. Joel Waterman of the Informal Decision Rendered in Favor of the Consolidated Edison Company of New York, Inc., Commission Determination (issued and effective Oct. 21, 2013) ("Waterman Order"). 
In the Waterman case, the complainant barred Defendant from entering his apartment due to perceived health risks, and was therefore charged several of the $100 no-access fees. Id. The Commission determined that the fee had been rightfully charged where the complainant "refused the utility access to inspect, and do work on, the utility's meter" due to unsubstantiated health and safety concerns. Id. at 1, 5—6 ("Complainant's basic argument in this case is that his concern for the health of Con Edison's employees 'and the public with whom they would subsequently come into contact' precludes utility access to its meter serving his home and, therefore, precludes the utility from imposing fees for his denial of such access. Complainant's concern centers on a particular antibiotic-resistant infection."). The Commission did not analyze whether Public Service Law §§ 65(6) or (9) prohibit fees relating to installing new equipment, as is the case here. Id. In fact, the Commission does not reference the relevant portion of the statute, even where the statute itself is named. See, e.g., id. at 2. Accordingly, the Court is unpersuaded that the PSC has previously ratified the $100 no-access fee for smart meter installation.
Conclusion
Based on the foregoing, the Court grants Defendant's motion to dismiss the SAC insofar as staying this proceeding pending a determination by the PSC. Upon a determination by the PSC, the parties shall confer to ascertain whether the Commission's determination has effectively disposed of the claims asserted here and notify the Court of such.
Accordingly, it is hereby,
ORDERED that Defendant's Motion to Dismiss the Second Amended Class Action Complaint is GRANTED to the extent of staying further proceedings in this action, except for an application to vacate or modify said stay; and it is further
ORDERED that either party shall make an application by notice of motion to vacate or modify this stay upon the final determination of the action/proceeding pending before the PSC; and it is further
ORDERED that the movant is directed to serve a copy of this Decision and Order with notice of entry on the Clerk of the General Clerk's Office within ten (10) days from entry and the Clerk shall mark this matter stayed as herein provided; and it is further
ORDERED that such service upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases; and it is further
ORDERED that parties shall appear before this Court on December 18, 2024, at 9:30 A.M. in Courtroom 428 for a status conference.
DATE 6/29/2024
ANAR RATHOD PATEL, A.J.S.C.

Footnotes

Footnote 1:Plaintiffs' initial Summons and Complaint included claims on behalf of then-Plaintiff Michael Cacioppo Belantra alleging that Defendants Consolidated Edison Company of New York, Inc. and Consolidated Edison, Inc. improperly charged Plaintiff Belantra a monthly "adjustment" fee of $9.50 per month since July 2022. NYSCEF Doc. No. 1. Plaintiff Belantra alleged that this fee was due to Defendants' inability to access Plaintiff Belantra's building. Id. Plaintiff Belantra voluntarily dismissed his claims on September 29, 2023. NYSCEF Doc. No. 24. Additionally, the parties stipulated to voluntarily dismiss all claims against Defendant Consolidated Edison, Inc. on August 15, 2023. NYSCEF Doc. No. 14.

Footnote 2:On August 2, 2023, Plaintiffs filed the First Amended Class Action Complaint ("FAC"). NYSCEF Doc. No. 11. Defendants filed a motion to dismiss the FAC on August 28, 2023. NYSCEF Doc. Nos. 16—22. On October 11, 2023, Defendant voluntarily withdrew the motion to dismiss the FAC. NYSCEF Doc. No. 27.