## Knipmeyer v. Bell Atlantic Corp.

*Roy Katriel* and *Pamela Zetterberg,* for plaintiffs.

*Robert Clothier III, Robert Heim* and *Joseph O'Connor,* for defendants.

SHEPPARD JR., *J.*, May 22, 2001—This is a class action against Bell Atlantic Corporation and its local operating companies. The plaintiffs, Kevin and Joanne Knipmeyer, claim that the phone companies misrepresented the meaning of the term "nonpublished telephone number." At issue are the defendants' preliminary objections. Because the "filed rate doctrine" bars the Knipmeyers' claims, the court sustains the objections and dismisses the complaint.

### FACTS

The defendants—collectively, "Bell Atlantic"—are Bell Atlantic Corporation and its nine local operating companies: Bell Atlantic-Delaware, Bell Atlantic-Maryland, Bell Atlantic-New Jersey, Bell Atlantic-Pennsylvania, Bell Atlantic-Virginia, Bell Atlantic-Washington, D.C., Bell Atlantic-West Virginia, New York Telephone Co. and New England Telephone & Telegraph Co.[1] The local operating companies serve 10 states and the District of Columbia. The Knipmeyers are Pennsylvania

---

1. The defendants have recently changed their names to Verizon Communications, Verizon Delaware, Verizon Maryland, etc. This opinion, however, refers to the defendants by their prior names.

residents and customers of Bell Atlantic-Pennsylvania. They paid Bell Atlantic-Pennsylvania a premium for a nonpublished telephone number. A nonpublished telephone number is a number that is not listed in the telephone directory or in Bell Atlantic's directory assistance service.

Bell Atlantic has a website through which a customer from any of the 10 states or the District of Columbia can order phone service from the local operating company serving the pertinent area. Among the pages on the website is a page for each state with the title "directory assistance." On this page the customer selects one of three options for his directory listing: (1) "listed in phone book;" (2) "not listed in phone book, but listed in directory assistance;" or (3) "nonpublished: not listed anywhere." Complaint, exhibit B.

Another page for each state has the title "nonpublished telephone number." This page further describes nonlisted and nonpublished telephone number services:[2]

"Nonlisted telephone number—Want a little privacy? With this service, you won't be listed in the telephone directory, but you will be listed in directory assistance.

"Nonpublished telephone number—Want even more privacy? With this service, Bell Atlantic will omit your telephone number from both the published telephone directory and from directory assistance. . . .

---

2. The format, copyright dates and service prices of the directory assistance webpage are different from those of the nonpublished telephone number webpage. Thus the court cannot now determine whether the nonpublished telephone number webpage—which provides a clearer description of nonpublished telephone number service—was available during the same time as the directory assistance webpage.

*"Additional information:*

"A nonlisted or nonpublished telephone number does not include blocking. You must use per call blocking or order line blocking if you want to block your name and number from people you call." Complaint, exhibit B.

Nonpublished telephone number service does not completely bar a number from disclosure. When billing an owner of a toll-free number for calls made to that number, Bell Atlantic lists in the bill all numbers—including nonpublished telephone numbers—that called the toll-free number. This seems to be an accepted and required practice that the Knipmeyers do not challenge. See *Perfetti v Bell Atlantic-Pennsylyania,* no. C-00003475 (Pa. Pub. Util. Comm'n Oct. 18, 2000). Instead, the Knipmeyers challenge the sufficiency of Bell Atlantic's website descriptions of nonpublished telephone number service. The Knipmeyers argue that "nonpublished: not listed anywhere" falsely implies that Bell Atlantic does not disclose nonpublished telephone numbers to anybody including owners of toll-free numbers. The Knipmeyers' two-count complaint requests damages for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for civil conspiracy to violate the UTPCPL.

In its preliminary objections to the complaint, Bell Atlantic argues that the Knipmeyers' claims must fail because (1) the filed rate doctrine bars the claims, (2) the Pennsylvania Public Utility Commission has primary subject matter jurisdiction over the claims, (3) the Knipmeyers fail to allege any false or deceptive statement, (4) the court does not have personal jurisdiction over the 10 out-of-state local operating compa-

nies, (5) the UTPCPL does not apply to out-of-state transactions by the out-of-state local operating companies and (6) the court does not have personal jurisdiction over the out-of-state class members.

## DISCUSSION

This court sustains the objection on the basis of the filed rate doctrine and dismisses the complaint.

As a public utility,[3] Bell Atlantic-Pennsylvania must file tariffs with the PUC showing all schedules of rates, rules, regulations, practices or contracts within the jurisdiction of the PUC. See 66 Pa.C.S §§102 and 1302. "Tariffs have the force of law and are binding on both the utility and the customer." *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission,* 663 A.2d 281, 284 (Pa. Commw. 1995). Unless the PUC grants an exception, a public utility cannot charge any other rate than that set forth in the tariff. *Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission,* 53 Pa. Commw. 241, 244, 417 A.2d 827, 828-29 (1980); 66 Pa.C.S §1303 ("No public utility shall, directly or indirectly, by any device whatsoever, or in anywise [sic], demand or receive from any person, corporation, or municipal corporation a greater or less rate for any service rendered or to be rendered by such pub-

---

3. The term "public utility" includes "[a]ny person or corporation now or hereafter owning or operating in this Commonwealth equipment or facilities for . . . [c]onveying or transmitting messages or communications [with certain exceptions not applicable here] by telephone or telegraph or domestic public land mobile radio service including, but not limited to, point-to-point microwave radio service for the public for compensation." 66 Pa.C.S. §102.

lic utility than that specified in the tariffs of such public utility applicable thereto."); 66 Pa.C.S §1304 ("No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage."). Any attempt to vary the terms of the tariff, even by agreement with the customer, is not effective. *Bell Telephone Co.,* 53 Pa. Commw. at 244, 417 A.2d at 829.

Federal courts and other states' courts have named this invariability of filed tariffs the "filed rate doctrine." See *e.g., American Telephone & Telegraph Co. v. Central Office Telephone Inc.,* 524 U.S. 214, 222 (1998); *Porr v. NYNEX Corp.,* 660 N.Y.S.2d 440, 442 (App.Div. 1997). Under the filed rate doctrine, customers are charged with notice of filed tariffs, and utilities and customers must abide by the tariffs. *Central Office Telephone,* 524 U.S. at 222. Ignorance or misquotation of the tariff is no excuse for deviating from its terms. *Id.* "[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." *Id.*

Courts have applied the doctrine to bar claims of breach of contract, breach of warranty, fraud, unjust enrichment and false advertising where the plaintiffs essentially sought different rates or services from those set forth in the tariff. *Id.* at 224-28 (holding that filed rate doctrine barred plaintiff's claim for breach of contract and tortious interference where plaintiff claimed that AT&T failed to provide certain additional services

promised in its sales brochures because the services pertained to subjects specifically addressed by AT&T's FCC tariff, and the tariff did not provide for those additional services); *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1171 (S.D.N.Y. 1996) (holding that filed rate doctrine barred plaintiff's claims for false advertising, fraud and breach of warranty where plaintiff argued that AT&T failed to disclose its billing practice of rounding the number of minutes of calls up to the next whole number because the relevant FCC tariff specifically disclosed and permitted the rounding up practice), *aff'd*, 138 F.3d 46, 56 (2d Cir. 1998); *Porr,* 660 N.Y.S.2d at 446 (following *Marcus* and dismissing claims based on same facts where tariff filed with New York agency addressed the practice).

Though the filed rate doctrine originated to bar claims based on rates approved by federal agencies, courts have applied it to bar claims based on rates approved by state agencies. See *e.g., Porr,* 660 N.Y.S.2d at 443 (applying filed rate doctrine to bar state law claims based on tariff approved by New York agency); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) (applying filed rate doctrine to bar RICO and fraud claims based on tariffs approved by New York and New England agencies); *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 847 F. Supp. 281, 289 (D.Conn. 1994), *aff'd*, 45 F.3d 58 (2d Cir. 1995) (applying filed rate doctrine to bar RICO claims based on rates approved by Arizona agency); *Taffet v. Southern Co.*, 967 F.2d 1483,1494 (11th Cir. 1992) (applying filed rate doctrine to bar claims based on tariff approved by Alabama and Georgia agencies); *H.J. Inc. v. Northw. Bell Telephone Co.*,

954 F.2d 485, 492 (8th Cir. 1992) (applying filed rate doctrine to bar RICO claims based on tariffs approved by Minnesota agency).

This court knows of no published court decision applying the filed rate doctrine to bar claims based on rates approved by the Pennsylvania PUC. But, see *Pennsylvania Power Co. v. Pennsylvania Public Utility Commission,* 127 Pa. Commw. 97, 109, 561 A.2d 43, 49-50 (1989) (discussing federal filed rate doctrine). However, sections 1303 and 1304 of the Public Utility Code—which effectively establish a statutory filed tariff doctrine[4]—and persuasive authority from other jurisdictions convince this court that the filed tariff doctrine bars claims where a plaintiff essentially seeks different rates or services from those set forth in a PUC tariff. 66 Pa.C.S. §1303; *Central Office Telephone,* 524 U.S. at 222.

Bell Atlantic-Pennsylvania's PUC tariff specifically defines nonpublished telephone number service:

"At the request of the customer, the numbers of initial dial tone lines may be omitted from the directory and from the directory assistance records of the telephone company, subject to [a $1.75 monthly rate and a $15 service charge]. These numbers are designated as 'nonpublished telephone numbers.' Unless the specific call number is given by the person calling, connection will not be established with a telephone having a 'nonpublished telephone number.' " Bell Atlantic-Pennsyl-

---

4. See *Watergate East Inc. v. District of Columbia Pub. Serv. Comm'n,* 662 A.2d 881, 888-89 (D.C. 1995) (describing similar D.C. statute, D.C.Code §43-529, as "a codification of the filed rate doctrine").

vania PUC Tariff No. 1, §5(A)(4)(c) (eff. May 11, 1997).[5]

The Knipmeyers allege that Bell Atlantic implicitly misrepresented on their website that nonpublished telephone number service includes omission of the Knipmeyers' number from bills sent to the owners of toll-free numbers. The tariff specifically defines the rights conferred on a customer who pays for nonpublished telephone number service: (1) omission of the customer's telephone number from the telephone book and from directory assistance, and (2) inability of an outside caller to connect with the customer without knowing the customer's phone number. Omission of the customer's telephone number from bills sent to toll-free number owners is not one of those rights. The Knipmeyers essentially ask the court to expand their rights under nonpublished telephone number service beyond the rights specifically set forth in the tariff. The filed rate doctrine prohibits this court from expanding those rights and bars the Knipmeyers' claims. *Central Office Telephone,* 524 U.S. at 225; *Keogh v. Chicago Northw. Ry. Co.,* 260 U.S. 156, 163 (1922) ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.").

The Knipmeyers' description of their injury in the complaint reinforces this conclusion. In paragraph 44 of the complaint, the Knipmeyers allege that they were injured "by, inter alia, paying for a service that they did

---

5. The defendants attached a copy of the tariff to their preliminary objections. Because publicly-filed tariffs have the force of law, the court has considered them on a demurrer even though the tariffs themselves are not part of the complaint.

not receive." To award damages for this injury, the court would have to calculate the difference in value between the nonpublished telephone number service that Bell Atlantic advertised and the nonpublished telephone number service that the Knipmeyers actually received. The end result of such an award would be an impermissible refund of a portion of Bell Atlantic-Pennsylvania's filed rate for nonpublished telephone number service. See *Marcus*, 938 F. Supp. at 1170 (holding that filed tariff doctrine bars any remedy that requires a refund of a portion of the filed rate); *Porr*, 660 N.Y.S.2d at 446 (same).

## CONCLUSION

The filed tariff doctrine bars the Knipmeyers' claims. The court will enter a contemporaneous order sustaining the preliminary objection based on the filed tariff doctrine and dismissing the complaint.[6]

## ORDER

And now, May 22, 2001, upon consideration of the defendants' preliminary objections to the complaint, the plaintiffs' response and the transcript of the oral argument, and in accord with the court's contemporaneously-filed opinion, it is hereby ordered that:

(1) the preliminary objection based on the filed tariff doctrine is sustained, and

(2) the complaint is dismissed.

---

6. In view of this determination, the court did not consider the remaining preliminary objections.