OPINION OF THE COURT
Skelos, J.
This appeal and cross appeal involve an action by the corporate plaintiffs — general contractors and residential home builders — against the defendant insurance company, from which the plaintiffs purchased a commercial general liability policy, and the underwriter of the policy. The plaintiffs’ action is grounded, for the most part, on their claim that the defendants improperly charged a higher premium based upon the plaintiffs’ employment of uninsured subcontractors, despite the fact that the policy excluded coverage for liability arising from the work of such subcontractors. The principal issue presented on this appeal is whether this claim is barred by the filed rate doctrine. We answer that question in the affirmative.
In connection with a residential construction project, the affiliated plaintiffs purchased a commercial general liability insurance policy (hereinafter the policy) from the defendant Everest National Insurance Company (hereinafter Everest). The policy was underwritten by the defendant Inter-Reco, Inc. (hereinafter Inter-Reco), and was issued pursuant to a “program,” denominated the “Inter-Reco program,” which provides commercial general liability insurance to contractors.
The policy contained an endorsement, entitled “Independent Contractors,” by which the named insured agreed that independent contractors would have in force certificates of insurance from subcontractors, “providing evidence of like coverage” and containing “limits of liability ... at least equal to the limits of [the] policy.” The policy further contained an exclusion from *41 coverage (hereinafter the Exclusion), providing, in relevant part, that the policy did not apply to “ ‘bodily injury,’ ‘property damage’ or ‘personal and advertising injury’ ” arising out of work performed by subcontractors when (1) there was no “prior written and signed contract,” requiring the subcontractor “to indemnify and hold harmless the Named Insured”; or (2) when the named insured’s subcontractor “fails to have in force commercial general liability insurance including contractual liability coverage for the benefit of the . . . subcontractor ... as well as the Named Insured for indemnification and/or contribution claims.”
At the beginning of the policy period, the plaintiffs paid an “advance or deposit” premium of $28,541, which was subject to a premium audit at the end of the one-year policy period to determine the final premium.
In general, in determining the amount of premium to charge contractors under the Inter-Reco program, the underwriter employs a classification system set forth in the Commercial Lines Manual prepared by the Insurance Services Office, Inc. (hereinafter ISO). The defendants assert, and the plaintiffs do not dispute, that the Commercial Lines Manual (hereinafter ISO Manual) is approved by the New York State Insurance Department (hereinafter Insurance Department). In employing the classification system, multiple class codes are assigned to an insured, and the class codes correspond to a “premium base” and rate, which is utilized to calculate the premium. “Premium base” refers to the basis on which the premium will be calculated, such as “total cost” of subcontracted work or “payroll.” As the defendants established, pursuant to the ISO Manual, the class codes and corresponding premium bases and rates applicable to the work of adequately insured subcontractors is different from those applicable to work performed by uninsured or underinsured subcontractors.
The relevant portion of the plaintiffs’ operations was initially assigned a particular class code that is applied when work is performed by an adequately insured subcontractor. After the one-year policy period ended, however, Inter-Reco conducted a premium audit, and determined that the plaintiffs did not have a certificate of insurance for one of their electrical subcontractors. Accordingly, the work performed by that subcontractor was reassigned a class code that is applied to work performed by uninsured or underinsured subcontractors, which class code corresponded to the premium base “payroll.” According to the *42 plaintiffs, the rates applicable to the “payroll” premium base are higher than those applicable to the premium base that had originally been assigned to the work of the uninsured electrical subcontractor. Using the entire amount that the plaintiffs paid to the uninsured electrical subcontractor, including for both labor and materials, Inter-Reco determined that the plaintiffs owed an additional premium of $2,683.
The plaintiffs thereafter commenced the present action.[1] In their first cause of action, the plaintiffs sought to recover damages against Everest for breach of contract, contending that Everest improperly charged an additional premium for a risk excluded from coverage (i.e., that relating to the work of the uninsured subcontractor), and, alternatively, assuming such a charge was proper, that Everest overcharged them by basing the premium on the amount that the plaintiffs had paid to the uninsured subcontractor for both labor and materials, instead of just labor. In their second cause of action insofar as asserted against Inter-Reco, the plaintiffs alleged that Inter-Reco was unjustly enriched because it received commissions for collecting the additional premium. Lastly, in their third cause of action, the plaintiffs alleged that the defendants engaged in unlawful and deceptive conduct in violation of General Business Law § 349. As to the third cause of action, the plaintiffs requested that the defendants “be enjoined to remedy the illegal premium charges,” including, “by adjusting the premiums to subtract premium charges for which coverage was specifically excluded.”
The defendants subsequently moved for summary judgment dismissing the complaint. They argued, among other things, that all of the plaintiffs’ claims were barred by the filed rate doctrine. In support of that assertion, the defendants submitted part of the papers they filed (hereinafter the filing) with the Insurance Department in order to obtain approval of their proposed rates and rules for the Inter-Reco program. The filing, which was approved by the Insurance Department, included the independent contractor endorsement and the Exclusion.
The Supreme Court granted the defendants’ motion in part. (2011 NY Slip Op 31202[U] [2011].) The court concluded that the plaintiffs’ claim, which was asserted in all three causes of action, that they were improperly charged an additional premium for a risk that was excluded from coverage was barred *43 by the filed rate doctrine. However, the court concluded that the filed rate doctrine did not bar the plaintiffs’ claim, asserted in the breach of contract and unjust enrichment causes of action, that the defendants improperly calculated the portion of the premium relating to the work of the uninsured subcontractor based upon labor and materials, instead of just labor. In that respect, the court determined that the rating rule approved by the Insurance Department required the defendants to utilize “payroll” in assessing the premium, and the defendants’ justification for using the amount paid for both labor and materials was based upon industry practice, not upon an approved rating rule. Thus, the defendants were only awarded summary judgment dismissing, in part, the causes of action alleging breach of contract and unjust enrichment. The court directed dismissal in its entirety of the cause of action alleging violation of General Business Law § 349, since the only deceptive practice identified by the plaintiffs was the defendants’ alleged act of charging a premium for a risk excluded from coverage, which assertion, again, was barred by the filed rate doctrine.
The plaintiffs appeal from so much of the order as granted that branch of the defendants’ motion which was for summary judgment dismissing, in part, the cause of action alleging unjust enrichment insofar as asserted against Inter-Reco, and granted that branch of the defendants’ motion which was for summary judgment dismissing the cause of action alleging a violation of General Business Law § 349. The defendants cross-appeal from so much of the order as awarded them summary judgment dismissing only in part the causes of action alleging breach of contract and unjust enrichment.
Although the Supreme Court awarded the defendants summary judgment dismissing, in part, the breach of contract cause of action, and although the plaintiffs argue in their brief that this was error, the plaintiffs’ notice of appeal is limited to the portions of the order which awarded Inter-Reco summary judgment dismissing, in part, the unjust enrichment cause of action and awarded the defendants summary judgment dismissing the cause of action alleging a violation of General Business Law § 349. Thus, inasmuch as the notice of appeal is jurisdictional, the plaintiffs’ arguments as to why the court erred in awarding summary judgment dismissing, in part, the breach of contract cause of action are not properly before this Court (see City of Mount Vernon v Mount Vernon Hous. Auth., 235 AD2d 516, 517 *44 [1997]; Royal v Brooklyn Union Gas Co., 122 AD2d 132, 133 [1986]; see also CPLR 5515 [1]).
Before proceeding to the principal issue on appeal — the applicability of the filed rate doctrine — we conclude that the breach of contract and unjust enrichment causes of action should have been dismissed in their entirety, on different grounds. As to the breach of contract cause of action, the defendants argued that the plaintiffs did not sustain any damages because they did not pay the increased premium assessed after the audit. To recover damages for breach of contract, the plaintiffs must demonstrate “the existence of a contract, [their] performance pursuant to that contract, the defendants’ breach of their obligations pursuant to the contract, and damages resulting from that breach” (Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122, 127 [2011]; see JP Morgan Chase v J.H. Elec. of N.Y., Inc., 69 AD3d 802 [2010]). Here, the plaintiffs assert that Everest breached the insurance policy by charging a premium for their use of uninsured subcontractors, or, alternatively, by improperly calculating the premium owed for their use of uninsured subcontractors. However, the defendants demonstrated, prima facie, through the affidavit of an employee of Inter-Reco, that the plaintiffs never paid the challenged premium. The plaintiffs did not submit any evidence in opposition to raise a triable issue of fact as to whether they paid the premium. Thus, in opposition to the defendants’ prima facie showing, the plaintiffs failed to raise a triable issue of fact as to whether they sustained any actual damages from Everest’s alleged breach of contract.
Instead, in response to the defendants’ showing, the plaintiffs rely upon cases indicating that “ ‘[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made,’ ” in order to avoid preclusion under the “voluntary payment doctrine” (Dillon v U-A Columbia Cablevision of Westchester, 292 AD2d 25, 27-28 [2002], affd 100 NY2d 525 [2003], quoting Gimbel Bros. v Brook Shopping Ctrs., 118 AD2d 532, 535 [1986]).[2] Having refused to pay the premium, however, the plaintiffs chose the wrong form of action. The plaintiffs should *45 have commenced an action for a judgment declaring that they were not required to pay the premium, which action would not have required a showing of damages. Instead, they commenced an action to recover damages for breach of contract, requiring them to show damages, which they cannot do. Accordingly, the Supreme Court should have directed dismissal of the cause of action alleging breach of contract.
For the same reason, the Supreme Court should have directed dismissal of the cause of action alleging that Inter-Reco was unjustly enriched in its entirety.[3] “An unjust enrichment claim ‘rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another’ ” (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142 [2009], quoting Miller v Schloss, 218 NY 400, 407 [1916]). Thus, to recover for unjust enrichment, a plaintiff must show “that (1) the [defendant] was enriched, (2) at [the plaintiffs] expense, and (3) that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered” (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011] [internal quotation marks omitted]; see Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]).
Here, the plaintiffs alleged that Inter-Reco was unjustly enriched because it received commissions for collecting the improper premium from the plaintiffs. Even assuming, theoretically, that such an unjust enrichment claim would be cognizable despite the fact that any commissions paid to Inter-Reco were not paid directly by the plaintiffs (cf. Sperry v Crompton Corp., 8 NY3d 204, 215-216 [2007]; IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d at 142), the plaintiffs’ unjust enrichment cause of action must be dismissed because the defendants demonstrated that the plaintiffs never paid the additional premium for which they claim Inter-Reco unjustly received commissions. Thus, because no part of any commissions received by InterReco could be attributed to money paid by the plaintiffs for the challenged premium, Inter-Reco cannot have been unjustly enriched at the plaintiffs’ expense.
The final cause of action, which alleged that the defendants violated General Business Law § 349 by charging a premium for an excluded risk, and sought injunctive relief for that alleged violation, is barred by the filed rate doctrine.
*46 The filed rate doctrine bars actions against federal- and state-regulated entities which are “grounded on the allegation that the rates charged by [those entities] are unreasonable” (Wegoland Ltd. v NYNEX Corp., 27 F3d 17, 18 [2d Cir 1994]; see Porr v NYNEX Corp., 230 AD2d 564, 568, 569 [1997]). “Simply stated, the doctrine holds that any ‘filed rate’ — that is, one approved by the governing regulatory agency [here, the Insurance Department] — is per se reasonable and unassailable in judicial proceedings brought by ratepayers” (Wegoland Ltd. v NYNEX Corp., 27 F3d at 18; see City of New York v Aetna Cas. & Sur. Co., 264 AD2d 304, 304-305 [1999]; Minihane v Weissman, 226 AD2d 152 [1996]; see also Byan v Prudential Ins. Co. of Am., 242 AD2d 456 [1997]). Thus, “a consumer’s claim, however disguised, seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission, is viewed as an attack upon the rate approved by the regulatory commission” and, therefore, barred by the doctrine (Porr v NYNEX Corp., 230 AD2d at 568).
The “filed rate doctrine is supported by two distinct, albeit related, policy ‘strands’ ” — the nondiscrimination and justiciability strands (id. at 571; see Beller v William Penn Life Ins. Co. of NY., 8 AD3d 310, 313 [2004]; Marcus v AT&T Corp., 138 F3d 46, 58 [2d Cir 1998]). The nondiscrimination rationale recognizes that “legislative bodies design agencies for the specific purpose of setting uniform rates” in order to prevent price discrimination, and that “allowing individual ratepayers to attack the filed rate ‘would undermine [that] scheme of uniform rate regulation’ ” (Beller v William Penn Life Ins. Co. of N.Y., 8 AD3d at 313, quoting Arkansas Louisiana Gas Co. v Hall, 453 US 571, 579 [1981]; see Marcus v AT&T Corp., 138 F3d at 58). More specifically, without the filed rate doctrine, “a discriminatory system would result, with those having recourse to the courts paying less for the same services than other ratepayers who have either not sued, or who, having sued, are granted less substantial relief by different courts and juries” (Porr v NYNEX Corp., 230 AD2d at 569; see Keogh v Chicago & Northwestern R. Co., 260 US 156, 163 [1922]).
The justiciability rationale was aptly described in Wegoland Ltd. as follows:
“The regulatory agencies are deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates. The agencies’ experience and investí *47 gative capacity make them well-equipped to discern from an entity’s submissions what costs are reasonable and in turn what rates are reasonable in light of these costs. . . .
“As compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates. Regulators employ their peculiar expertise to consider the whole picture regarding the reasonableness of a proposed rate. They make hundreds if not thousands of discretionary decisions about the submitted costs and ultimately arrive at the approved filed rate. Courts are simply ill-suited to systematically second guess the regulators’ decisions and overlay their own resolution” (27 F3d at 21; see Porr v NYNEX Corp., 230 AD2d at 572).
Here, the plaintiffs concede that the Insurance Department approved both the Exclusion and use of the ISO rating rules for assessing premiums related to the work of uninsured subcontractors. They assert, however, that the filed rate doctrine does not apply with respect to their claim that the defendant improperly charged a premium for an excluded risk because this is not a challenge to the filed rates or a request that the defendants “deviate from those rates.” In making this assertion, the plaintiffs are essentially interpreting “rates” to be equivalent with “charges.” It is true that the plaintiffs are not strictly challenging the rates applicable to particular risks, but are challenging the manner in which the premiums are calculated. The filed rate doctrine, however, encompasses such a challenge.
In American Telephone & Telegraph Co. v Central Office Telephone, Inc. (524 US 214 [1998]), the United States Supreme Court clarified that the filed rate doctrine applies not only to charges, but to the “classifications, practices, and regulations affecting such charges” (id. at 223 [internal quotation marks omitted]; see also Kross Dependable Sanitation v AT&T Corp., 268 AD2d 874, 875 [2000]). In that respect, the Supreme Court observed: “Rates ... do not exist in isolation. They have meaning only when one knows the services to which they are attached” (American Telephone & Telegraph Co. v Central Office Telephone, Inc., 524 US at 223). The Court explained that “[i]f discrimination in charges [did] not include non-price features,” then the carrier could circumvent the applicable regulatory scheme “by the simple expedient of providing an additional *48 benefit at no additional charge” (id. [internal quotation marks omitted]). “An unreasonable ‘discrimination in charges,’ that is, can come in the form of a lower price for an equivalent service or in the form of an enhanced service for an equivalent price” (id. [internal quotation marks omitted]). In that case, the Court held that the plaintiffs claim that it was entitled to certain services and billing methods, by virtue of certain representations made to it by the defendant’s representatives and sales brochures, was barred by the filed rate doctrine.
In Porr v NYNEX Corp. (230 AD2d 564 [1997]), the plaintiff, a putative class member, sought to challenge the defendant NYNEX Corp.’s policy of charging for telephone calls in whole-minute increments, such that a call lasting one minute and one second would be billed as a two-minute call (id. at 567). The plaintiff claimed that this policy had not been stated plainly in the defendant’s filing with the Public Service Commission, and had not been revealed to the public. This Court rejected the plaintiffs assertion, and the trial court’s conclusion, that the essence of the complaint was not “ ‘rate making’, or the reasonableness or alleged excessiveness of a given rate” (id. [internal quotation marks omitted]). This Court concluded that “at the heart of the plaintiffs grievance [was his] suggestion that he was entitled to be billed ‘per second’ ” (id. at 575). Since the Public Service Commission had authorized the “ ‘rounding up’ ” practice, however, the plaintiff’s General Business Law § 349 claim was barred by the filed rate doctrine (id.). In so concluding, this Court implicitly recognized that it is not only the price charged to customers that is protected by the filed-rate doctrine, but, under certain circumstances, the manner in which the charges are calculated.
Similarly, in Matter of Concord Assoc. v Public Serv. Commn. of State of N.Y. (301 AD2d 828 [2003]), the petitioner, who had purchased a parcel of real property on which a hotel was situated, sought to challenge the manner in which it was billed for water service; specifically, it was billed at a flat rate for service, rather than a metered rate. The petitioner contended that billing it at a flat rate was unjust and unreasonable since its operations did not utilize the entire property, particularly, it did not use the hotel building (see id. at 829). The Appellate Division, Third Department, rejected the petitioner’s claims as barred by the filed rate doctrine (see id. at 830-831).
In the present case, the plaintiffs seek to challenge, inter alia, the defendants’ act of enhancing their premium due to their use *49 of uninsured subcontractors, in light of the Exclusion. In support of their argument, the plaintiffs cite to Home Ins. Co. v Chang (41 NY2d 288 [1977]), for the proposition that premiums are not payable with respect to transactions that are not covered by the subject insurance policy. Although that case does, indeed, support that proposition (see id. at 289), there is no indication in that case that the applicability of the filed rate doctrine was raised or considered. Rather, the issue reviewed by the Court in that case, in which an insurance company sued its insured for unpaid premiums, was whether a particular business arrangement created a risk that fell within coverage provided to the plaintiff under an ocean marine insurance policy, and thus whether the plaintiff had to declare that business transaction under the policy and pay premiums with respect thereto (see id. at 290). The Court concluded that the transaction fell within an express exclusionary clause, that “the insurer was not otherwise at risk” under the policy, and that the insured was not, therefore, liable for any unpaid premiums (id. at 291).
Aside from the fact that the filed rate doctrine was not addressed in that case, Home Ins. Co. v Chang is distinct from the present case. The insurance policy in that case only covered certain commercial transactions. Thus, the issue was whether the insured was required to declare a particular business transaction and pay premiums with respect to that transaction or whether, instead, the transaction was excluded from coverage. Here, the plaintiffs obtained commercial general liability coverage from Everest to cover any liability arising during the course of a construction project. There is no question that the plaintiffs engaged in a construction project covered by the commercial general liability policy. Although the plaintiffs frame the issue as one of whether they must pay a premium for excluded coverage, that is an oversimplified characterization of the issue. The issue is the manner in which the premium for the commercial general liability policy, under which the plaintiffs undisputedly had coverage, is calculated. The plaintiffs were not charged a separate premium for having used uninsured subcontractors. They were charged one premium, and into that calculation was factored their use of uninsured subcontractors.
The Insurance Department approved both the method of calculating premiums, including use of payroll as a base with respect to any uninsured subcontractors and the particular rate applied to the payroll base, as well as the use of the Exclusion. Since the method of calculating the plaintiffs’ premium for a *50 policy which includes the Exclusion was approved by the Insurance Department, it is unassailable in a judicial action.
The filed rate doctrine “is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue” (Marcus v AT&T Corp., 138 F3d at 59). Here, both strands are implicated. If this Court were to determine that it was improper for the defendants to, effectively, enhance the plaintiffs’ premium on the basis of its use of uninsured subcontractors, the plaintiffs “would have won for [themselves] a reduced rate” for their insurance policy, and nonparty insureds covered by identical policies, who also used uninsured subcontractors, “would of necessity pay a higher rate” (Porr v NYNEX Corp., 230 AD2d at 574). “Such a ‘discriminatory’ result cannot be squared with the filed rate doctrine’s mandate of equal rates for equal service” (id.).
As to the justiciability strand, as noted, the Insurance Department approved both the Exclusion for uninsured subcontractors and use of the ISO rating rules which provide for a different calculation of premiums where uninsured subcontractors are used. The courts lack the expertise to determine whether that method for calculating premiums is unreasonable in light of the exclusion from coverage of liability associated with the work of uninsured subcontractors (see generally Porr v NYNEX Corp., 230 AD2d at 572). It may be, for example, that despite the Exclusion, Everest’s exposure related to the work of uninsured subcontractors is not zero. This type of determination is precisely one that is vested with the Insurance Department, which has the expertise and the tools to evaluate risks and costs borne by insurance companies (see City of New York v Aetna Cas. & Sur. Co., 264 AD2d at 304-305; Minihane v Weissman, 226 AD2d at 152; see generally Porr v NYNEX Corp., 230 AD2d at 572).
The plaintiffs additionally argue that while the Insurance Department approved both the Exclusion and the ISO rating rules for assessing premiums related to the work of uninsured subcontractors, the Insurance Department did not approve the simultaneous use of the Exclusion and those rating rules. In other words, it is the plaintiffs’ position that the defendants were permitted, by the Insuranpe Department, either to exclude coverage for uninsured subcontractors or to charge increased *51 premiums for uninsured subcontractors pursuant to ISO’s rating rules, but not both. This contention is purely speculative. Particularly in the context of regulated rates, this Court must take the filing and approval at face value, and not speculate about the subjective intent of the Insurance Department on approving the filing.
At bottom, the plaintiffs ask this Court to determine that the premium they were charged is not reasonable in light of the coverage provided, and to require Everest to recalculate their premium to, in the plaintiffs’ view, more fairly comport with the coverage provided. However, such a “judicial determination of impropriety in the existing filed rates, which are at all times subject to the Superintendent’s review, would offend the Legislature’s determination to commit enforcement of the regulatory scheme to the Department of Insurance” (City of New York v Aetna Cas. & Sur. Co., 264 AD2d at 305; see Marcus v AT&T Corp., 138 F3d at 61; see generally Porr v NYNEX Corp., 230 AD2d at 575). Thus, the defendants were properly awarded summary judgment dismissing the plaintiffs’ cause of action alleging violation of General Business Law § 349.
In light of our determination, we need not reach the parties’ remaining contentions.
Therefore, the order is affirmed insofar as appealed from, and the order is reversed insofar as cross-appealed from, on the law, and those branches of the defendants’ motion which were for summary judgment dismissing the cause of action to recover damages for breach of contract and the cause of action to recover damages for unjust enrichment insofar as asserted against the defendant Inter-Reco, Inc., are granted in their entirety.
Eng, PJ., Lott and Cohen, JJ., concur.
Ordered that the order is affirmed insofar as appealed from; and it is further,
Ordered that the order is reversed insofar as cross-appealed from, on the law, and those branches of the defendants’ motion which were for summary judgment dismissing the cause of action to recover damages for breach of contract and the cause of action to recover damages for unjust enrichment insofar as asserted against the defendant Inter-Reco, Inc., are granted in their entirety; and it is further,
Ordered that one bill of costs is awarded to the defendants.

. Although the complaint is styled as a class action, the plaintiffs had not moved for or received class certification as of the filing of this appeal.

. The common-law voluntary payment doctrine “bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law” (Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d at 526).

. The Supreme Court directed dismissal of the unjust enrichment cause of action in its entirety insofar as asserted against Everest, and the plaintiffs do not appeal from that portion of the order.